Ruffin, C. J.
 

 John Williams died intestate in 1824, seised and possessed of a large real and personal estate in
 
 *461
 
 Johnston county, and leaving seven infant children, of whom the plaintiff was one. Of all of them the defendant, ell, was appointed the guardian in 1826, and, as such, took into possession the land descended to them from their father, lying on both sides of Neuse River. One Isaac Williams administered on the personal estate of John Williams; and, alleging that he had exhausted the personal estate in paying the debts of the intestate, and that there remained a balance of $981 83 due to him, the administrator, on his administration account, the said Isaac, in March, 1831, filed.his bill in the Court of Equity against the present plaintiff and his brothers and sisters, as the heirs of their father, praying satisfaction of his said demand out of the real estate descended. The suit was defended by Powell, as the guardian of the children of John Williams, upon the grounds, that the land was not legally chargeable to the administrator, and that the sum demanded was not due, or but a small part of it. On the 20th of May, 1831, the plaintiff came of full age, and, having in the mean time contracted for the sale thereof to the defendant, Powell, he, by deed bearing date the 5th of September, 1831, in consideration of the sum of $600, con veyed to the defendant all the share of the plaintiff of and in the lands descended from his father, with general warranty. When the plaintiff came of age, he instituted suit by petition against the infant wards of Powell, for partition of the lands and the allotment of the plaintiff’s share to him. The sale to the defendant was made pending that petition, which was afterwards proceeded in, so that, in May, 1833, 479 acres on the north side of the river, and 216 1-2 acres on the south side of the river, were allotted in severalty as the share of the plaintiff; and the defendant took possession thereof, claiming the same under his said purchase. In March,' 1S37, the suit of Isaac Williams against the plaintiff and the other heirs of his father, was compromised, and a decree entered therein by consent for the sum of $500; of which one-seventh part was, by the decree, to be paid by Powell, as representing or standing in the place of the plaintiff. The present bill was filed on the 30th of August, 1838, and the object of it is to have the contract rescinded, and a
 
 *462
 
 re-conveyance of the land to the plaintiff, upon the payment t^ie sums advanced by the defendant, after deducting the profits made by him. The bill states, that, besides being the guardian of the plaintiff and his brethren, the defendant had married their mother, and thus had, as a father, the immediate personal care and control of the children, and commanded the confidence of the plaintiff and entire respect for his opinions. It charges, that the defendant was particularly desirous of owning the plaintiff’s land, and knew its value; and had formed designs, before the plaintiff came of age, of purchasing it from him at an under value, as soon as he should attain twenty-one: That to enable him the better to succeed in those views, the defendant represented to the plaintiff and in the family at large the claim of Isaac Williams, the administrator of the plaintiff’s father, to be ruinous to the heirs, although, as the plaintiff has since discovered, the defendant knew the small amount of that demand in comparison with the amount of the estate, and was well advised by able counsel that probably even that could not be recovered.
 

 The bill further charges, that, before the plaintiff came of age and afterwards, until the sale, the defendant advised him to remove out of the State to the West, well knowing that the plaintiff.could not do so without making sale of his land to get the means for removing, as that was his only property. And that ultimately, the plaintiff being influenced by the advice of the defendant, which he then thought disinterested, and much alarmed also by the representations made by the defendant of the encumbrances aforesaid, which the defendant artfully magnified, agreed to make the sale and conveyance to the defendant, at the price of $600; which the defendant paid; and upon the receipt of which the plaintiffleft the State and has since resided abroad, until shortly before the compromise made in March, 1837, whereby the plaintiff’s proportion of the encumbrance, including interest up to that time, was ascertained to be but little over $70. The bill further charges, that the price, given by the defendant, for plaintiff’s interest in his father’s lands, was grossly inadequate: that it was worth more than double the sum, even if the incumbrance had been such, as the defendant represented it; but
 
 *463
 
 that the plaintiff from his want of knowledge of the lands and of experience upon such subjects, and from his confidence in the fairness and friendship of his father-in-law and late guardian, was induced, without further enquiry into those points, to sell at the inadequate price mentioned. The answer denies that the plaintiff was under the influence of the defendant or had any particular respect for his opinions, and states that the plaintiff was notoriously .insubordinate and beyond the defendant’s control. It further states, that the plaintiff determined to remove to the West and without any advice from the defendant; and that he was anxious to sell his land, that he might raise money lor his out-fit, and offered it to several persons before he came to the defendant. That not being able to sell to anyone else, the plaintiff then offered his portion to the defendant, and that the defendant advised him not to sell but to-go to work on the land, and wait until the decision of the suit against the heirs, when the title would be clear, and'he could sell to greater advantage. But that the plaintiff declared that he was then determined to sell at some price or other; and the defendant, having no doubt that the plaintiff would so sell, was induced to make the purchase himself. The answer states, that, besides the consideration of $600 expressed in the deed,the defendant was also to pay such sum as might be decreed in the suit against the heirs, against the plaintiff on his share. The answer furtherstates, that the defendant feared, that Isaac Williams would recover his claim, and that he-occasionally spoke of it in the family; but in so doing he only expressed the apprehension really felt by him, and, not for the unworthy purpose of alarming or deceiving the plaintiff; so far from it, the defendant avers, that he repeatedly advised him not to sell. The answer furtherstates, that, after he had taken the deed, the defendant was informed-by counsel, for the first time, that a dealing’with his late ward, so soon after he-came of age, might perhaps be impeached; and’thereupon he sent a message by a mutual friend to the plaintiff proposing to rescind the contract, which the plaintiff refused to do. The answer then insists upon the lapse of time-and relies on the statute of limitations;
 

 
 *464
 
 Conveyances between persons standing in the relation, w^ich these parties did, are justly the objects of suspicion in Courts of Equity. An undue influence, either from a blind confidence on the side of a youth just of age, or awe and fear of a former guardian, must often enter
 
 into
 
 the considerations which lead to such contracts, and in most cases it is almost impossible by evidence to make those considerations, though actually existing in the bosoms of the parties, distinctly appear. But it would be a public mischief to encourage dealings between persons thus situated, by
 
 allowing
 
 the conveyance to stand, unless
 
 actual
 
 unfairness should in each case be clearly established; as is the rule between persons standing on an equal footing. But contracts with an heir for his expectancy, or with a young- remainder-man, entitled after the death of his father, for his remainder, or by a guardian with his ward just upon his coming of
 
 age,
 
 are all put upon thes same footing, and set aside upon a ground of public utility, and to prevent fraud, and not merely to redress it.
 
 Twistleton
 
 v.
 
 Griffith,
 
 1 Pr. Wms. 711;
 
 Wiseman
 
 v.
 
 Beake,
 
 2 Vern. 121;
 
 Hylton
 
 v.
 
 Hylton,
 
 2 Ves. jr. 547. Undue influence, 'produced by the attachment of the ward or obtained by the flattery of the guardian, is not always necessary to vitiate the transaction. There are many other ways, in which a guardian may obtain an unequal bargain; from his particular knowledge of the estate and its encumbrances, of the temper and plans of his ward and of his necessities. Therefore, in such cases, the guardian must, in support of his purchase, shew that the ward acted freely, without any control or influence of either kind, and that the offer came from the yard, and without any contrivance of the guardian to draw him into making it, and that the guardian did not even take advantage of an offer imprudently made by the ward: at least without fully communicating all the guardian knew, that might enable the other party to judge correctly of his interests. In other words, only a fair and equal bargain between such persons ought to stand. When, then, the guardian seeks the purchase, and obtains it for much less than the true value, the court cannot hesitate to treat the conveyance merely in the light of a security for
 
 *465
 
 the money advanced by the purchaser, as if he were a gagee. Any substantial inadequacy of price in such a ease, amounts to undue advantage.
 
 Peacock
 
 v.
 
 Evans,
 
 16 Ves, 517.
 
 Gowland v. De Faria,
 
 17 Ves. 23.
 
 Medlicott
 
 v.
 
 O’Donnell,
 
 1 Ball and Beat. 165.
 

 In the present case the evidence does not establish any particular control or influence held over the plaintiff by the defendant: at least, not through the medium of affection, for they were rather on bad terms, than otherwise. But it is* clear to the points, that the plaintiff was a wild, thoughtless and thriftless youth, and was known and declared so to be by the defendant; who, believing that the plaintiff would sell his patrimony at any price he could get, in order'to get a little ready money, took- advantage of the plaintiff’s impatience and imprudence and purchased it at a great undervalue: — probably at a fourth or fifth of the actual value. Much of this is, indeed, to be collected from the answer; in which the defendant endeavors to excuse himself upon the ground, that the plaintiff was determined to sell at all events, and that if he did not buy, some one else would, and in which the defendant does not express even his own belief, that he gave a fair price or any thing like it. But upon the depositions the case' is put beyond doubt. It is the opinion of three witnesses, that the land assigned as-the share of the plaintiff (695¿ acres) is worth from $4 to $5 per acre, and it is stated that the dowel* of Mrs. Powell covered about half the land (216! acres) lying on the south side of the river; and-a brother of the plaintiff sold his share after the division for about $3000. Besides,this inadequacy of price, gross as it is, it appears by the testimony of Daniel Boon, that he owned land adjoining the plaintiff’s tract on the south side of the river and was desirous of buying that part from the plaintiff, and in a conversation with the defendant so informed him. That both the' defendant and the witness, from their knowledge of the plaintiff’s character, expected he would sell his land, and they agreed with each other that Boon should buy for both and he keep that on the south side and the defendant have that on the north, at $800; or, if the defendant should make the purchase, that Boon should have the part he wished, on
 
 *466
 
 q,e same terms. Another witness, William B. Allen, states ^at kealso owned land adjoining the lands of the plaintiff’s father on the south of the river and wished to get them; an(j j.{jree or fom. months before the plaintiff made his deed and immediately after he came of age, that the defendant informed the witness, the plaintiff intended to sell his share in his father’s land, and that he wished to buy it; but thatthe plaintiff would sell to any other person on better terms than to the defendant,, and, therefore, he proposed to the witness to make the purchase on their joint account; so that thewitness should take the land that might be allotted on the south of the river, and the defendant would take that on the north side and allow the sum of $1000, for it. These witnesses establish a case of gross inadequacy of price; that instead of advice to the plaintiff not to sell, there was an industrious seeking of the bargain by the defendant, and a plan to draw the plaintiff into a sale to the defendant without his being aware of it — that there was an unfair contrivance to prevent competition in the purchase, by uniting secretly with those, who most probably wished to buy, upon an agreement to divide. And that, finally, the defendant got all the land for about two thirds of the price he had authorised the witness to give for the two thirds of the land the defendant wanted.— When to this are added the circumstances, that a part of the plaintiff’s land was a reversion after his mother’s dower, and that the whole was subject to an encumbrance of which it does not appear the plaintiff knew anything except from the defendant, who admits he spoke of it with apprehension in the family, and does not prove that he spoke truly of it as it was: the plaintiff’s case is nearly as strong a one for relief as can be imagined. The answer states, indeed, that the defendant offered to rescind the contract; but that the plaintiff refused. But although the defendant states his proposition to have been made through a mutual friend, he has failed to furnish the testimony of that friend, or any other person, to establish the facts; and therefore they cannot be admitted. The statute of limitations is not a bar; for the bill was filed within seven years from the making of the deed by the plain
 
 *467
 
 tiff and that alone is decisive. There must be a decree the plaintiff and a reference to take the proper accounts.
 

 Per Curiam, Decree accordingly.