THE BRUNSWICK & WESTERN RAILWAY CO. vs. CLEM.

1. The special plea setting up accord and satisfaction, covenant not to sue and estoppel in consequence of the payment of an agreed sum of money, was not supported by a preponderance of the evidence.

2. The special plea stricken by the court on demurrer was defective in not alleging what services were paid for, or how much was paid, or to whom the plaintiff stated, or with whom he agreed, that " he did not intend to sue," and in not disclosing the nature of the de-

fence aimed at, whether accord and satisfaction, covenant not to sue or estoppel. As the plea stood, the matter contained in it was no bar to the action.

3. Objection to the competency of a witness, if known, must be taken before the witness is examined. A convict of the crime of perjury is not now disqualified from being a witness. The disqualification laid down in section 4466 of the code, was removed by the evidence act, codified in section 3854.

4. Where there is no plea that a promise by the wrong-doer was made and accepted in satisfaction of the tort, any charge of the court as to rescission for non-performance of the promise is irrelevant, the tort being the subject-matter of the action. A mere accord, though partly performed or executed, does not extinguish the original right; the part execution may be pleaded as satisfaction *pro tanto*. A promise of future performance will amount to satisfaction if expressly accepted as such, but generally not otherwise. For such a promise to be available in bar, it must be pleaded, and its acceptance averred.

5. Evidence sufficient to justify the verdict.

March 28, 1888.

Pleadings. Accord and satisfaction. Covenant not to sue. Estoppel. Witness. Perjury. Charge of court. Evidence. Verdict. Before Judge ATKINSON. Ware superior court. April term, 1887.

Reported in the decision.

GOODYEAR & KAY, for plaintiff in error.

WALTERS & ARNHEIM, *contra*.

BLECKLEY, Chief Justice.

This was an action for a personal injury. Clem was in the employment of the railroad company as a train-hand; and in March, 1886, his arm was crushed in the act of coupling cars, or more accurately, in the act of coupling a car to the engine. The record shows that in all probability, the casualty was produced by the defective spring of one of the bumpers. In consequence of that defect, the machinery closed so as to clasp the arm and crush it.

Clem brought his action in August, 1886, and upon the trial a verdict was rendered in his favor for $1,467. The railroad company moved for a new trial on various grounds, which was refused. In order to dispose of these grounds properly, it is necessary to consider several points in the case besides the general grounds that the verdict was contrary to evidence, contrary to law, etc.

1. The trial was had upon two pleas: (1) the general issue, not guilty; (2) a special plea, which was a sort of composite plea, embracing accord and satisfaction, covenant not to sue and estoppel. All these special elements rested upon the alleged payment of $100 as a consideration, and alleged acceptance thereof by Clem. The plea set up that, in consideration of $100, there was an accord and satisfaction, a covenant not to sue, and that Clem was thereby estopped. The charge of the court recognized this defence, if proved, as sufficient to bar the action; and there was no complaint that the court did not charge upon the plea in a way to make it a defence if the jury had found it proved. But the evidence admits of at least two theories with respect to it. The weight of it, as we think, is, that the plea was not proved.

2. Besides these pleas, there was a nondescript plea, which the court, upon demurrer, struck; and the striking of that plea is one of the grounds set up for a new trial.

The language of the plea is as follows:

"The defendant says that the plaintiff in said cause was, subsequent to the date of the alleged injury complained of in his declaration, and prior to the filing of his declaration, employed by the defendant and paid for his services on the faith of the statement and agreement made by the plaintiff, that he did not intend to sue for damages by reason of said alleged injury; and of this he puts himself upon the country."

Whether this was meant to be urged as a covenant not to sue, or as a satisfaction, or by way of estoppel, does not appear upon the face of the plea. It has somewhat the characteristics of a plea in *Juchter vs. Boehm, Bendheim & Co.*, 63 *Ga.* 76, 77. It sets up a sort of dead wall, and

says " You cannot go through that "; but disdains to clas-
sify the bulwark or point out wherein the legal strength of
it abides.   The rule of pleading is that the answer must
plainly, fully and distinctly set forth the defence.   Code,
§3452.   We think this failed to do so.   In the first place,
it does not specify what services were paid for, or how
much was paid.   In the next place, it does not specify to
whom the statement or with whom the agreement was
made.   It is not alleged that it was stated to the defend-
ant or agreed with the defendant that he (the plaintiff)
did not intend to sue.   And besides, if it was meant to set
this up as an agreement not to sue, why should it be alleged
as an agreement that he did not intend to sue—a stipula-
tion about his intention rather than about his act?   If
meant as satisfaction or as estoppel, why were not these
defences, one or both, distinctly specified?   For these de-
fects, if there be no others, we think that the court was
justified in striking this plea.

It is said that it is almost in the very terms of the con-
curring opinion of Judge JACKSON in *Galloway vs. The
Railroad Company*, 57 *Ga.* 513.   But Judge JACKSON,
though not endeavoring to point out the requisites of a
plea, but only to state his view of what would constitute
the substance of a defence, named estoppel expressly,
which the plea does not.   Moreover, he was merely ren-
dering his reason for concurring in the judgment.   Each
member of the court gave reasons for concurrence.   The
judgment was pronounced by Chief Justice WARNER, and
each of the Associate Justices concurred specially.   So,
that case is authority for nothing but the affirmance of the
judgment in the court below.   The reasoning of no one of
the judges is authority as matter of law, because each judge
took his own view of the proper ground upon which the
judgment ought to be rested.   It is unnecessary, however,
to discuss the legal soundness of Judge JACKSON's concur-
ring opinion; because this plea has the defects which I
have pointed out, if no others; and whether that opinion

be sound or not, the plea was well stricken, as too loose, vague, uncertain and indefinite, and as presenting, in its actual shape, no bar to the action.

3. Clem was examined as a witness in his own behalf; and at some stage of the case, after his evidence had all come in, the defendant produced a record of conviction, and evidence of Clem's identity as the convict, the offence being perjury, and thereupon moved to withdraw from the jury and exclude all of Clem's testimony, upon the ground that he was an incompetent witness, having been convicted of perjury; and section 4466 of the code, which declares that a convict of perjury is incompetent to give evidence in a court of justice, was and is relied upon. The court refused the motion, and we think properly; for two reasons: in the first place that provision is repealed by the evidence act, codified in section 3854; and in the next place, the objection was known before the witness was examined, and the code, §3860, expressly requires that where the objection to competency is known, it shall be made before examination.

4. The court charged the jury with great fullness and particularity and with extraordinary minuteness; and in his charge he passed beyond the defences in the record, as we think, and entered into a course of instruction founded upon the evidence, without any reference to the pleadings. He charged, amongst other things, this (and this part of the charge is one of the grounds of the motion for a new trial): "It is insisted upon the part of the plaintiff that the defendant did not comply with the terms of this contract, and for the reasons given. . . If the defendant wanted the plaintiff to sign a release which contained nothing else, and he refused and it was because it did not set out the contract upon the part of the defendant, and the plaintiff was ready to carry it out, and the defendant refused to carry out his part of the contract—refused to pay the consideration or to furnish the consideration upon which the contract for accord and satisfaction

was based, the plaintiff would have the right to re-
scind the contract and bring his action for the recovery
of damages." The complaint is, that if there was a
contract of accord and satisfaction partly performed,
the plaintiff could not rescind as to the part performed
without restoring the defendant to its original condition;
and this is certainly the ordinary rule of rescission where it
is not a matter of mutual consent. Code, §2860. But the
rule does not apply to accord and satisfaction, because in
order for there to be accord and satisfaction, the accord
must be executed. That is what makes the satisfaction.
As long as the accord is executory, although it is partially
performed, the original cause of action is not extinguished,
and an action may be brought upon it, and the remedy for
he defendant is to plead his part performance as satisfac-
tion *pro tanto*. He gets credit for all he has paid upon it,
but the right of action is not extinguished by an accord
merely, without complete satisfaction, where the parol
contract is that performance, not mere promise, is to con-
stitute the satisfaction. If a promise is to constitute it
before performance, then the accord is executed by the
promise; but here there is no plea whatever that any
promise was accepted in satisfaction or made in satisfac-
tion. The plea was, that the payment of $100—the actual
payment, and the acceptance of it, were the satisfaction.
If there had been a plea to the effect that the parties
made an accord, and that the plaintiff accepted the prom-
ise of the defendant as a satisfaction, which promise was
so and so, setting out the same, and the plea had been
supported by proof, so as to come within the terms or the
spirit of the code, §§2878, 2879 and 2880 on the subject,
then there would have been no power to retreat; but the
evidence indicated that the real contract ultimately made
between the parties, (there are traces of a contract pre-
viously agreed on, but the negotiations seem to have been
continued, the parties feeling their way along and going
gradually step by step to get at an ultimate result)—the

ultimate result was, according to the weight of the evidence, that the railroad company would pay Clem's expenses, doctor's bills, drug bills, and continue him on wages while he was disabled, and afterwards continue him in its employment on wages as long as he complied with the rules of the company,—give him permanent employment. That was the contract which the evidence appears to establish. The right to have wages when he did not work, the right to have his medical and drug bills paid, and the right to continue permanently in employment, would form a good consideration for relinquishing his right of action for the tort. A promise of these benefits would suffice for performance if accepted as such. It would give a right of action against the company for a breach of the promise. The making of the promise would be the performance of the accord, and would therefore amount to a satisfaction of the tort. But there is no such thing pleaded; and if the doing of these things, and not merely the promise to do them, was to be the satisfaction, no satisfaction ever took place, according to the real contract; and consequently there was no error in this charge, except that it did not apply to the plea. The charge ought not to have been given for that reason. But the proper charge applicable to the plea was given apart from the objectionable matter; and as this objectionable matter did not qualify or abrogate the part of the charge which was appropriate and correct, we think there was no cause for a new trial in the error here pointed out.

5. The general grounds of the motion for a new trial we have carefully considered, and we think the jury could properly find this verdict. It was insisted that Clem was himself in fault, because he ought to have used a stick in coupling; and the evidence does indicate that if a stick had been used, there would have been no injury; in fact, after this injury occurred, a stick was used by another employé to make the identical coupling, and it was successfully made. There was a rule of the company that re-

quired every train-hand to use a stick in coupling; but Clem testified that he did not know of the rule, that he had never heard of it; and two other train-hands, the only two examined, testified that they did not know of it; and although there was some proof tending to show that he had been warned of the rule, yet that was for the jury; and there was abundant evidence to find that he neither knew of the rule nor was put upon diligence to inquire about it. The truth is, that if the company had such a rule as that, they ought to have promulgated it and seen to it that their employés knew of it. Another point urged to show fault was that Clem ought to have had a lantern, the attempt to couple being made in the night, and that he either did not have it, or if he had it he did not properly use it or he might have discovered the defective condition of the coupling. Clem testified that he had a lantern, and that he did use it, but did not discover the condition of the coupling; and it is clear that it was the duty of a certain officer or agent of the road to inspect cars and find out their condition, and that it was improper to let the car, in this condition, come into use. And moreover, it was shown that unless Clem had knelt down and looked at the spring, he could not have known the condition of the coupling; that he could not, in the ordinary mode of coupling cars, discover that the spring was defective until the unfortunate accident occurred. At all events, there was evidence ample to justify this verdict.

The judgment refusing a new trial is affirmed.