LAFAYETTE KING v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 15 November, 1911.)

1. Railroads—Relief Departments—Benefits Accepted—Consideration—Burden of Proof.

When a railroad company sets up as a defense to an action for personal injury that the plaintiff was a member of its relief department and was concluded under the rules and regulations of that department, by accepting benefits, from bringing his action, whether a release, accord and satisfaction, or by whatever name called, and it appears that the defendant had full control of the department, with the power to make or alter the rules and regulations at will and to fix the membership fees, the burden is upon the defendant, relying upon the binding effect of the rules and regulations as a contract, to show that on its part it has paid a valuable consideration by introducing evidence of what it has paid or done for the support of the department, and it must be made to appear that the consideration was not so small that a person of ordinary discernment and judgment would consider that the defendant had paid nothing.

2. Same—Guarantee.

For a railroad company to avail itself of the defense that the plaintiff was a member of its relief department and accepted benefits thereunder, and could not recover damages for defend-

ant's negligence in injuring him, under the rules and regulations
of the department, a valuable consideration must be shown, and
the mere fact that the defendant had guaranteed by contract to
pay all the operating expenses of the department and to pro-
vide it with necessary facilities is not of itself sufficient evidence
thereof, the rules and regulations being formulated by defendant
and under its control.

3. **Railroads—Relief Department—Members—Privity of Contract.**

There is privity of contract between a railroad company hav-
ing a relief department for which it furnishes facilities and
operating expenses and an employee, a paying member of that
department, and a contract may be sustained, upon a valuable
consideration shown, that the employee, in proper instances, may
not receive the benefits of the department and then sue for
damages for a personal injury alleged to have been received
owing to the defendant's negligence.

4. **Railroads—Relief Department—Benefits—Voluntary Acceptance
—Public Policy—Interpretation of Statutes.**

A contract between a railroad company and its employee giving
the latter the choice, after the injury has been received, of main-
taining his action for damages for personal injuries inflicted by
the former or relinquishing his right of action by voluntarily
accepting the benefits of the relief department, if he is a member,
is not against public policy or in contravention of the statutes
invalidating agreements between employer and employee which
exempt the employer from its liability for negligence.

5. **Railroads—Relief Department—Benefits—Voluntary Acceptance
—Fraud and Undue Influence—Surrounding Conditions—Master
and Servant.**

A voluntary acceptance by an employee of a railroad company
of the benefits of the latter's relief department so as to release
his cause of action for damages arising from the negligence of
the company, must be free from fraud and undue influence, by
which is meant a controlling influence, impelling him to act as
otherwise he would not do, and there may be considered as rele-
vant circumstances the facts that the department was under the
control of the master, that the employee might be influenced
under this relationship, the absence or presence of the employee's
friends or relations, and the presence of employees of the com-
pany likely to influence his choice, the physical or mental condi-
tion induced by the injury existing at the time of choosing, the
general advantage the department holds out for those who are
members, and the benefit to the company in causing its em-
ployee to determine whether he will sue or accept the benefits
under the department.

6. Railroads—Relief Department—Member—Voluntary Acceptance —Knowledge—Opportunity—Fraud.

An employee of a railroad company is required to exercise diligence in protecting his rights in choosing whether he will sue the railroad company for damages for a personal injury sustained or accept 'the benefits of the relief department, of which he was a member, and he will not be excused on the ground of want of knowledge, where he has had the opportunity to inform himself.

7. Railroads—Relief Department—Corporations—Ultra Vires.

It is not *ultra vires* for a railroad to establish a relief department for the benefit of employees who are members of it, in case of sickness and accident, charging the members a fee and contributing to its support and efficiency.

8. Railroads—Relief Department—Benefits Received—Personal Injuries—Negligence—Judgment—Credits.

When an employee of a railroad company has accepted benefits from its relief department under conditions permitting recovery for personal injuries negligently inflicted on him, the amount of the benefits received should be credited on the judgment.

CLARK, C. J., and BROWN and WALKER, JJ., concur in result; HOKE, J., concurs in opinion as written.

APPEAL from *Whedbee, J.,* at October Term, 1910, of NEW HANOVER.

The plaintiff brings this action to recover damages for personal injuries caused, as he alleges, by the negligence of the defendant. The defendant denies negligence and alleges, as a defense, that the defendant maintains a relief department; that the plaintiff was a member thereof, and that after he was injured he accepted benefits from said department, which, under its rules and regulations, bars a recovery.

Evidence was offered by the plaintiff in support of his contention. The defendant introduced evidence in rebuttal, and also introduced the rules and regulations of said department, which are very fully stated in the report of *Barden v. R. R.,* 152 N. C., 318.

Section 4 of the rules and regulations provides: "The company shall have general charge of the department, guarantee the fulfillment of its obligations as determined by these regulations,

take charge of all moneys belonging to the relief fund, and be responsible for their safe-keeping; pay into the fund interest at the rate of 4 per cent per annum on monthly balances in its hands, supply the necessary facilities for conducting the business of the department, and pay all the operating expenses thereof."

No evidence, however, was introduced that the defendant had contributed any money to the funds of the department or for its maintenance.

There was evidence that the plaintiff was entitled to be paid benefits for a period of eight months, and that he was paid for about four months.

It appears from the rules and regulations:

(1) That the relief department is a department of the defendant.

(2) That the rules and regulations thereof are prescribed by the defendant.

(3) That under these rules and regulations the defendant has control of the department and of its money.

(4) That the rules and regulations can be changed by the defendant without the consent of the members of the department, and that they cannot be changed except with the consent of the defendant.

(5) That the object of the department is the establishment and management of a fund, to be known as the "Relief Fund," for the payment of definite amounts to employees contributing thereto, who are to be known as "members of the Relief Fund," when under the regulations they are entitled to such payment by reason of accident or sickness, or, in the event of their death, to the relatives or other beneficiaries designated by them with the approval of the superintendent.

The relief fund will consist of contributions from members thereof, income derived from investments and from interest paid by the company and advances by the company, when necessary, to pay benefits as they become due.

(6) That the defendant is not a member of the department, but it is provided: The company shall have general charge of the department, guarantee the fulfillment of its obligations as

determined by these regulations, take charge of all moneys belonging to the relief fund, and be responsible for their safekeeping; pay into the fund interest at the rate of 4 per cent per annum on monthly balances in its hands, supply the necessary facilities for conducting the business of the department, and pay all the operating expenses thereof.

(7) That all employees of the company who, under the regulations, are contributors to the relief fund shall be designated as "members of the Relief Fund."

There shall be five classes of members. The highest class in which an employee may be a member shall be determined by his regular or usual monthly pay, as follows:

| Monthly Pay. | Highest Class. |
|---|---|
| Less than $35 | First. |
| $35 or more, but less than $55 | Second. |
| $55 or more, but less than $75 | Third. |
| $75 or more, but less than $95 | Fourth. |
| $95 or more | Fifth. |

For employees paid by the hour, trip, piece, or in any other way than by the month, the highest class shall be determined by the usual amount of earnings in a month.

(8) That the word "contribution" wherever used in these regulations shall be held and construed to refer to such designated portion of the wages payable by the company to an employee as he shall have agreed, in his application, that the company shall apply for the purpose of securing the benefits of the relief fund; or to such cash payment as it may be necessary for a member to make for said purpose.

Contribution for full membership shall be made monthly in advance, at the following rates: First class, 75 cents per month; second class, $1.50; third class, $2.25; fourth class, $3; fifth class, $3.75.

(9) Wherever used in these regulations, the word "disability" shall be held to mean physical inability to work *by reason of sickness or accidental injury,* and the word "disabled" shall apply to members thus physically unable to work. The decision as to when members are disabled and when they are able to work shall rest with the medical officers of the department.

The decision as to whether disability at any time shall be classed as due to sickness or due to accident, and as to whether any disability shall be considered a relapse or an original disability, shall rest with the medical officers of the department.

(10) That the following benefits will be paid to members or beneficiaries entitled thereto in accordance with the provisions of these regulations:

Payment for each day of disability classed as due to accident for a period not longer than fifty-two (52) weeks, as follows: To a member of the first class, 50 cents; second class, $1; third class, $1.50; fourth class, $2; fifth class, $2.50; and at half these rates thereafter during the continuance of disability.

Also payment to or in behalf of the members of such amounts for necessary surgical treatment as may be approved by the chief surgeon; and provision by the department for free surgical treatment of the member in one of the hospitals under its control when requested by a medical examiner of the department and authorized by the superintendent or chief surgeon. No member shall have authority to contract any bills against the department, and nothing herein shall be held to mean or imply that the department shall be responsible for the payment of such bills as a member shall contract or his surgeon may charge. Bills for surgical attendance, to be considered by the department, must be made out against the member and must be itemized.

Payment, in accordance with the conditions prescribed in the regulations, upon the death of a member, as follows: To the beneficiary of a member of the first class, $250; second class, $500; third class, $750; fourth class, $1,000; fifth class, $1,250. Also payment of $250 for each additional death benefit of the first class to which the beneficiary is entitled.

(11) That employees are required to sign a written application before joining the relief department, in which it is provided: "I also agree that, in consideration of the amounts paid and to be paid by the said company for the maintenance of said relief department, and of the guarantee by said company of the payment of said benefits, the acceptance by me of bene-

fits for injury shall operate as a release and satisfaction of all claims against said company, and all other companies associated therewith in the administration of their relief departments, for damages arising from or growing out of said injury; and further, in the event of my death, no part of said death benefit or unpaid disability benefit shall be due or payable unless and until good and sufficient releases shall be delivered to the superintendent of said relief department, of all claims against said relief department, as well as against said company and all other companies associated therewith, as aforesaid, arising from or growing out of my death, said releases having been duly executed by all who might legally assert such claims; and further, if any suit shall be brought against said company, or any other company associated therewith as aforesaid, for damages arising from or growing out of injury or death occurring to me, the benefits otherwise payable and all obligations of said relief department and of said company created by my membership in said relief fund shall thereupon be forfeited without any declaration or other act by said relief department or said company."

(12) That section 62 of the rules and regulations is as follows: "62. In case of injury to a member he may elect to accept the benefits in pursuance of these regulations, or to prosecute such claims as he may have at law against the company or any companies associated therewith in the administration of their relief departments.

"The acceptance by the member of benefits for injury shall operate as a release and satisfaction of all claims against the company and all other companies associated therewith as aforesaid, for damages arising from or growing out of such injury; and further, in the event of the death of a member, no part of the death benefit or unpaid disability benefit shall be due or payable unless and until good and sufficient releases shall be delivered to the superintendent of all claims against the relief department, as well as against the company and all other companies associated therewith as aforesaid, arising from or growing out of death of the member, said releases having been duly executed by all who might legally assert such claims; and fur-

ther, if any suit shall be brought against the company or any other company associated therewith as aforesaid, for damages arising from or growing out of injury or death occurring to a member, the benefits otherwise payable and all obligations of the relief department and of the company created by the membership of such member in the relief fund shall thereupon be forfeited without any declaration or other act by the relief department or the company; but the superintendent may, in his discretion, waive such forfeiture upon condition that all pending suits shall first be dismissed.

"If a claim for damages on account of injury to or death of a member shall be settled by the company or any company associated therewith as aforesaid, without suit, or by compromise, such settlement shall release the relief department and the company from all claims for benefits on account of such injury or death."

At the conclusion of the evidence, his Honor stated that he would charge the jury "that the defendant company, having paid a part of the relief money to the plaintiff and the plaintiff having accepted it, whether it was the full amount or not, if he accepted any part of it, he could not recover," and in deference thereto the plaintiff submitted to judgment of nonsuit and appealed.

*Kellum & Loughlin and Herbert McClammy for plaintiff.*
*Davis & Davis and George B. Elliott for defendant.*

ALLEN, J., after stating the case: The plaintiff having introduced evidence tending to prove that he was injured by the negligence of the defendant, it follows that there was error in the ruling of his Honor, unless the acceptance of benefits from the relief department by the plaintiff, after his injury, operates to release the defendant company from liability. We think it does not have this effect under the evidence in this case, for two reasons:

1. It does not appear that there is any consideration for the release, moving from the defendant. The answer alleges that the defendant has expended large sums in maintaining the relief department, and in contributions to the fund from which

benefits are paid to members; but these are matters of defense, and under our system of pleading are deemed to be denied by the plaintiff, and no evidence was introduced in support of the allegations of the answer.

The evidence does not disclose that the defendant has paid one dollar for operating expenses or otherwise, or that the plaintiff has received anything that he has not paid for by his own contributions. The only reference in the evidence to the payment of any sum by the defendant is in the following question and answer: "I ask you if all this money that has been paid into the relief department, and upon which the relief department has been operated, has not been the wages taken out of the laborers of the Atlantic Coast Line?" Answer: "No, sir."

The authorities are uniform that a release must be founded on a valuable consideration, and that the plea is not good unless the consideration is alleged. A. and E. Ency. Pl. and Pr., vol. 18-92; Story Eq. Pl., sec. 797; 1 Dan. Ch. Pr., 670; *Hale v. Grayon,* 99 Ky., 173; *Maness v. Henry,* 96 Ala., 458; *Swan v. Benson,* 31 Ark., 730; *Scott v. Scott,* 105 Ind., 584.

In *Crawley v. Timberlake,* 36 N. C., 460, *Chief Justice Ruffin* says: "A court of equity does not sustain these shorthand bars, such as a release, a stated account, and the like, unless they be pleaded as not only existing instruments, but also as being fair and wise, and proper to be equitably enforced. . . . So, with respect to this particular subject of a release now before us, *Lord Redisdale* states (in *Hughes v. Kearney,* 1 Sch. and Lef.) that the plea of release *must* set out the *consideration* upon which it was made, if it be impeached in that point. . . . In other words, the release, unless fairly obtained and on a proper consideration, ought not to preclude the court from going into the case and dealing out justice to the parties according to its real facts."

This case was approved in *Shaw v. Williams,* 100 N. C., 281, and in *Boutten v. R. R.,* 128 N. C., 341, the Court quotes with approval this language from *Shaw v. Williams, supra:* "And so every release must be founded on some consideration; otherwise, fraud must be presumed."

Some of the authorities speak of transactions of this character as a release, and others as an accord and satisfaction, but by whatever name it is called, it is pleaded by the defendant as a binding contract, existing between it and the plaintiff, and a promise without consideration cannot be enforced. If it is necessary to a good plea to allege the consideration, the party relying on the defense assumes the burden of proving the allegations as made. He is not required to prove a full consideration, but it must be valuable, and as such must not be so small as to cause one of ordinary discretion and judgment to say he paid nothing. *Fullenweider v. Roberts,* 20 N. C., 420; *Worthy v. Caddell,* 76 N. C., 86.

The defendant contends, however, that in the absence of evidence proving the payment of a consideration, the guarantee by the defendant to fulfill the obligations of the department, and its agreement to supply the necessary facilities for conducting its business and to pay all the operating expenses furnishes a consideration. Ordinarily this would be true, but we cannot concede its sufficiency, standing alone, to support a release of the plaintiff's cause of action, when considered in connection with the other regulations of the department.

The department has been established by the defendant, and its rules and regulations made by it. Under these rules and regulations it retains the control of the department, with the power to make changes as it sees fit, and it determines the contributions of members, and may decrease or increase them.

It is, therefore, possible for the defendant to fix the amounts to be contributed by members large enough to insure it harmless from loss on account of accident and negligence, and to throw on the employees a burden which does not rightfully belong to them.

If such a result should be reached, and it appeared affirmatively that the defendant paid nothing under its rules and regulations, the promise of the defendant "to guarantee, etc.," would be promises incorporated in the regulations by the defendant, without any expectation of being called on to perform them, and would not furnish a consideration, and under such circumstances the acceptance of benefits would not affect the right to recover.

2. If a consideration had been proven, it appears, according to the evidence of the plaintiff, that he was entitled to receive benefits for eight months, and that he was paid for four months.

In the consideration of this phase of the case it must be remembered that it is the "acceptance of benefits," not the acceptance of a promise to pay benefits, that bars a recovery.

The transaction partakes of the nature of an accord and satisfaction, which to be effectual must be performed in its entirety. If performed in part only, the original right of action remains and the party to be charged is allowed what he has paid in diminution of the amount claimed.

*Chief Justice Bleckley* states the rule, with its qualifications, in *Railway Co. v. Clem,* 80 Ga., 539. He says: "As long as the accord is executory, although it is partially performed, the original cause of action is not extinguished, and an action may be brought upon it, and the remedy of the defendant is to plead his part performance as a satisfaction *pro tanto.* He gets credit for all he has paid upon it, but the right of action is not extinguished by an accord, merely, without complete satisfaction, where the parol contract is that performance, not mere promise, is to constitute the satisfaction, though if a promise is to constitute it before performance, then the accord is executed by the promise."

Blackstone says: "An accord is a satisfaction agreed upon between the party injuring and the party injured, which, when performed, is a bar to all actions on this account." 3 Bl. Com., 15.

"Accord executory without performance accepted is no bar. Accord with part execution cannot be pleaded in satisfaction. The accord must be completely executed to sustain a plea of accord and satisfaction." Bacon Abr., title "Accord and Satisfaction," A. and C.

In *Peytoes' case,* 9 Co., 79, it is said: "And every accord ought to be full, perfect, and complete, for if divers things are to be done and performed by the accord, the performance of part is not sufficient, but all ought to be performed."

These and other authorities to the same effect are cited with approval in *Kramer v. Heim,* 75 N. Y., 574, and in conclusion

the Court there says: "The doctrine which has sometimes been asserted, that mutual promises, which give a right of action, may operate and are good as an accord and satisfaction of a prior obligation, must, in this State, be taken with the qualification that the intent was to accept the new promise as a satisfaction of the prior obligation. Where the performance of the new promise was ·the thing to be received in satisfaction, then, until performance, there is not complete accord, and the original obligation remains in force."

The following authorities announce the same rule: Lawson R. and R., vol. 5, secs. 2567-8; Par. Con., vol. 2, p. 683, 5th Ed.; Cyc., vol. 1, p. 315, and cases in note; Clark Con., 491.

There are three cases bearing directly on the effect of the payment of a part of the benefits due under the provisions of a relief department on the original cause of action for negligence: *Penn Co. v. Chapman,* 220 Ill., 428; *Johnson v. R. R.,* 58 S. C., 488, and *Petty v. Brunswick R. R.,* 109 Ga., 666. In the Illinois case it is held that part performance does not extinguish the right of action for negligence, and the cases from South Carolina and Georgia hold to the contrary.

These last cases from South Carolina and Georgia proceed upon the idea that by the terms of the relief department then before the Court, the employee had stipulated that the acceptance of any benefit released the right of action, as appears from what is said in the *Petty case.* "Petty (the plaintiff) therein expressly stipulated that acceptance by him from the relief and hospital department of any of the benefits provided for by its regulations should operate, without more, to release the defendant company from all claims for damages he might have against it"; and it is upon this ground that the case is distinguished from *Railway Co. v. Clem, supra.* We do not so understand the rules and regulations before us.

In an extended note to *Johnson v. Fargo,* 6 Am. and Eng. Ann. Cases, practically all the cases considering the terms of relief departments and their legal effect are collected, and among others the three above referred to. After stating the rule adopted by the Georgia and South Carolina courts, the editors say: "It will be observed that this doctrine is not only

opposed to the reasoning in *Penn Co. v. Chapman,* but is inconsistent with the well-considered cases, cited *supra,* holding that it is the receipt of benefits under the contract, and not the contract itself, that binds the employee."

We conclude, therefore, that the weight of authority and the reason of the thing favor the rule that a payment of a part of the benefits to which the employee is entitled does not prevent the prosecution of an action to recover damages for negligence, in the absence of an express stipulation that the acceptance of a part shall have that effect, and we so hold.

This disposes of the appeal, but the rules and regulations of the relief department are in evidence, and the question has been fully argued as to the effect of an acceptance of all the benefits to which an employee is entitled, from a fund to which the defendant has contributed, on his right of action for negligence, and as the question will necessarily arise again, it is our duty to consider it.

The question is undecided by this Court. The views expressed in *Barden v. R. R.,* 152 N. C., 318, relied on by the plaintiff, are entitled to great respect, emanating, as they do, from a member of this Court of learning and of much capacity for research; but the point in controversy here was not raised in that case.

In the *Barden case* no benefits were paid to the employee and the defendant railroad company did not rely on the provisions of the relief department as a defense. On the contrary, both plaintiff and defendant admitted the validity of the rules and regulations of the department.

The case in brief was this: The plaintiff alleged in his complaint:

(1) That the defendant was a railroad corporation.

(2) That it maintained a relief department.

(3) That as a part of its relief department it maintained a hospital.

(4) That in this hospital it employed surgeons and physicians.

(5) That he was an employee of the defendant and a member of the relief department.

(6) That as such he was entitled to be treated in the hospital when sick or disabled.

(7) That he was suffering from fistula and was admitted to the hospital and there negligently treated by the physicians.

The argument of the plaintiff was that the relief department was an agency of the railroad; that the hospital was a part of the department; that the physicians were employed in the hospital, and the conclusion deduced was that the physicians were agents of the railroad and therefore it was responsible for their negligence.

The defendant demurred to the complaint upon the ground that it did not state a cause of action, in that it was not alleged that the defendant failed to exercise due care in the selection of the physicians. The demurrer was overruled by the Judge of the Superior Court, but on appeal this ruling was reversed and the complaint held to be insufficient.

We therefore regard the question as an open one, presented for our decision.

It has been considered by the highest courts of Alabama, Georgia, South Carolina, Maryland, Pennsylvania, New Jersey, New York, Ohio, Indiana, Illinois, Iowa, and Nebraska, and by the Circuit Courts and the Circuit Courts of Appeal of the United States, and with two exceptions it has been held that an acceptance of all the benefits under the rules and regulations of a relief department, when it is the voluntary act of the employee, and is free from undue influence or fraud, bars an action for negligence. The exceptions are *Pittsburg R. R. v. Montgomery*, 152 Ind., 1, which was overruled in *Pittsburg R. R. v. Moore*, 152 Ind., 345, and *Miller v. R. R.*, 65 F. R., 305, which was disapproved on this point on appeal to the Circuit Court of Appeals, 76 F. R., 439.

We do not cite in support of the proposition the English cases of *Clement v. R. R.*, 2 Q. B. Div., 490; *Griffiths v. Dudley*, 9 Q. B. Div., 362, and the *Queen v. Grenier*, 3 Can. Sup. C., 30, p. 50, because they hold that a regulation is permissible which gives no option to the employee to accept benefits or sue, and which compels him to accept the benefits although injured by the negligence of his employer, which we would not follow.

In the cases which have come before the courts, it would seem that every attack conceivable has been made on the relief department.

It has been urged that it is against public policy, that there is no privity of contract between the employee and the railroad, and that there is no consideration to support a release of a right of action, and in reply the courts say, as stated in *Eckman v. R. R.,* 169 Ill., 318:

" 'The various courts which have had this question under consideration appear to agree that the stipulation in question is not opposed to sound public policy, but, on the whole, is conducive to the well-being of those whom it immediately affects, inasmuch as many railroad employees, owing to the dangerous character of their employment, are hurt without any culpable negligence on the part of their employer, and inasmuch as the employee retains, until after he sustains an injury, the right to elect whether he will sue his employer for negligence or accept benefits from the association. It also appears to be agreed that the obligation assumed by the employer to maintain and support such association by contributing the funds necessary for that purpose creates a privity of contract between the employer and all the members of the association and at the same time furnishes a sufficient consideration to support such contract.' Substantially the same language and reasoning have been used in the following cases, all of which sustain the sufficiency of such a defense: *Maine v. R. R.* (Iowa), 70 N. W. Rep., 630; *R. R. v. Bell,* 44 Neb., 44; *Donald v. R. R.* (Iowa), 61 N. W. Rep., 971; *R. R. v. Wymore,* 40 Neb., 645; *Vickers v. R. R.,* 71 Fed. Rep., 139; *Leas v. Pennsylvania Co.,* 10 Ind. App., 47; *Ringle v. Pennsylvania Co.,* 164 Pa. St., 529; *Shaver v. Pennsylvania Co.,* 71 Fed. Rep., 931; *Otis v. Pennsylvania Co.,* 71 *id.,* 136; *Johnson v. R. R.,* 163 Pa. St., 127; *Spitzer v. R. R.,* 75 Md., 162; *Fuller v. Relief Assn.,* 67 *id.,* 433; *Graft v. R. R.* (Pa.), 8 Atl. Rep., 206; *Martin v. R. R.,* 41 Fed. Rep., 125; *S. v. R. R.,* 36 *id.,* 655; *Owens v. R. R.,* 35 *id.,* 715. . . . In the case at bar the appellee contributes largely to the fund under its agreement to make up or guarantee deficits, to furnish surgical aid

attendance, to pay all the expenses of administration and management, and to become responsible for the safe-keeping of the funds of the relief department."

It is the fact that the employee is not compelled to accept the benefits—that he has the *choice after his injury to accept benefits or to sue to recover damages*—which saves the rules and regulations from condemnation as a contract against public policy or against negligence. To deny this right of exercising his choice to the employee would be equivalent to saying that when injured he can make no settlement with his employer.

"The injured party, therefore, is not stipulating for the future, but settling for the past; he is not agreeing to exempt the company from liability for negligence, but accepting compensation for any injury already caused thereby. He may as well accept it in installments as in a single sum, and from an appointed fund to which the company has contributed as from the company's treasury, as a result of litigation. The substantial feature of the contract, which distinguishes it from those held void as against public policy, is that the party retains whatever right of action he may have until after knowledge of all the facts, and an opportunity to make his choice between the sure benefits of the association or the chances of litigation. Having accepted the former, he cannot justly ask the latter in addition." *Johnson v. R. R.,* 163 Pa. St., 127.

The same reasoning meets the objection that the rules and regulations are in violation of the statutes existing in many States, invalidating agreements between employer and employee, having for their object the exemption of the employer from liability for negligence. *Hamilton v. R. R.,* 118 Fed. Rep., 92; *Petty v. R. R.,* 109 Ga., 666; *Pittsburg R. R. v. Moore,* 152 Ind., 345; *Pittsburg R. R. v. Hosea,* 152 Ind., 412; *Donald v. R. R.,* 93 Iowa, 284; *Pittsburg v. Cox,* 55 Ohio St., 497; *Day v. R. R.,* 179 Fed. Rep., 30.

The opinion in the last case was written by *Connor, J.,* and concurred in by *Judges Goff* and *Pritchard,* in which it is said:

"Assuming that the averments of the declaration bring the plaintiff's case within the provisions of the Constitution, and that 'he was injured by an act or omission of a fellow-servant,'

as defined and limited by the language of the section, does the contract, set forth in the special plea, waive any of the 'benefits' conferred by said section? It is manifest that, by becoming a member of the relief department, plaintiff did not waive or deprive himself of the right to maintain an action against defendant for an injury sustained by him while in its service as defined by the Constitution 'by an act or omission of a fellow-servant.' There is nothing in the rules and regulations of the relief department which could be averred or pleaded in bar of an action brought by him for such injury; nor did he, by becoming a member thereof, make any 'contract, express or implied,' by which he waived any of the 'benefits' conferred upon or secured to him by the Constitution. Giving the language of the section the most liberal construction possible, nothing more is secured to the employee, injured by the negligence of a fellow-servant, than the right to recover from the common master damages for such injury, in the same manner and to the same extent as if the same acts or omissions were those of the master himself in the performance of a nonassignable duty. We are unable to perceive how, by any possible interpretation, the scheme known as the relief department, or becoming a member thereof, can be said to waive the right of action secured to the employee by the Constitution. As uniformly held by other courts, in which the same contention has been made, the employee does not waive, or agree to waive, any rights to which he is entitled by becoming a member of the relief department. He simply agrees that, after the injury is sustained, and his cause of action accrues, he will elect whether to sue for damages or accept the benefits secured by the relief department; that he will not do both. There is no suggestion that plaintiff made his election under such circumstances or conditions, either mental, moral, or physical, making it inequitable to enforce it. Similar statutes have been enacted, whereby agreements made in advance of an injury, caused by the negligence of a fellow-servant or defective appliances, ways or means, are declared to be invalid. The courts have held that becoming a member of the relief department was not within the letter or spirit of these statutes."

Again, it is contended that the business is that of insurance, and that it is outside of the powers granted to a corporation to do a railroad business. The authorities hold the contrary view. *Maine v. R. R.,* 109 Iowa, 260; *S. v. R. R.,* 68 Ohio St., 41; *Beck v. R. R.,* 63 N. J. L., 232.

In the New Jersey case the Court says: "We must recognize that it (the railroad) has either express or implied power to engage the services of many men, and contract with them as to the compensation they shall receive for their services. Each of such employees is engaged in an employment which subjects him to the hazard of injury and the danger of death. Each is possessed of the liberty to contract with the employer respecting his compensation. A contract by which an employee permits such an employer to create a fund in part out of his wages, supplemented by a contribution by the employer when necessary, out of which relief for sick and injured employees is provided, and by which the employer undertakes to manage the fund and furnish the agreed-on relief, is, in my judgment, within the implied powers of the employer, if a corporation. On the part of the employer such a scheme may be deemed likely to increase the efficiency of the force it employs, and on the part of the employee it may tend to relieve from anxiety as to support if injured by any of the many dangers to which he is daily and hourly exposed. As incidental to the contract of employment and compensation, therefore, it is not *ultra vires.*"

The following authorities are also in point: *Sturgess v. R. R.,* 60 S. E. Rep., 940; *Fuller v. Relief Assn.,* 67 Md., 436; *Chicago v. Curtis,* 44 Neb., 55; *Chicago v. Bell,* 51 Neb., 462; *Harrison v. R. R.,* 144 Ala., 252; *A. C. L. v. Downing,* 166 Fed. Rep., 850; *Carter v. R. R.,* 115 Ga., 853; *Owens v. R. R.,* 35 Fed Rep., 718; *Spitzer v. R. R.,* 75 Md., 168; *Otis v. R. R.,* 71 Fed. Rep., 136; *Lease v. R. R.,* 10 Ind. App., 57; *Ringle v. R. R.,* 164 Pa., 532; *R. R. v. Edward,* 25 Ind. App., 674; *Brown v. R. R.,* 6 Dist. C. App. cases, 244; *Graft v. R. R.,* 8 Atl. R., 207; *Clinton v. R. R.,* 60 Neb., 692; *Black v. R. R.,* 36 Fed. Rep., 655; *Martin v. R. R.,* 41 Fed. Rep., 126; *Coliazzi v. R. R.,* App. Div., 4th Dept., March Term, 1911; Elliott on Railroads, vol. 3, sec. 1379 *et seq.*

Up to this point we have considered the effect of the voluntary acceptance by the employee of the benefits to which he is entitled, based upon the language of the rules and regulations, and uninfluenced by other matters, and hold that such acceptance operates as a release or an accord and satisfaction of a claim for damages on account of negligence, when based on a consideration moving from the defendant. If, however, the release is not voluntary, and if it is procured by undue influence or fraud, or has no consideration to support it, it will not avail as a defense.

The history of the relief department justifies the courts in subjecting settlements made thereunder to close scrutiny. They seem to have kept pace with the employer's liability acts, and as one of these was passed a relief department would be organized.

The English act, on which most of the American statutes are based, went into effect on 1 January, 1880, and on the same day the owner of a colliery notified his employees they must look to the department in the event of injury by negligence, and from then until now the effort has continued to avoid the increased liability imposed by the acts. In so far as those efforts are legitimate and fair they should be upheld, and no further.

By undue influence is meant a controlling influence, one which impels a person to do an act he would not otherwise do. *Westbrook v. Wilson*, 135 N. C., 402; *In re Abee*, 146 N. C., 274.

As is well said by *Justice Brown In re Will Amelia Everett*, 153 N. C., 85: "Experience has shown that direct proof of undue or fraudulent influence is rarely obtainable, but inference from circumstances must determine it. . . . Undue influence is generally proved by a number of facts, each one of which standing alone may be of little weight, but when collectively stated may satisfy a rational mind of its existence."

When it is in issue the jury have the right to consider the relation of the parties, the circumstances connected with their relationship, the condition and situation of the parties at the time of the transaction, the adequacy of the consideration, and other relevant facts.

The relation of employer and employee is not one of those regarded as confidential, from which a presumption of fraud or undue influence will arise, but it is recognized by the courts that the employer has great influence in determining the conduct of the employee and may use it to his injury. It is upon this ground that the statutes regulating the hours of labor are sustained, as stated in *Holden v. Hardy,* 169 U. S., 366. "The Legislature has also recognized the fact, which the experience of legislators in many States has corroborated, that the proprietors of these establishments and their operatives do not stand upon an equality, and that their interests are, to a certain extent, conflicting. The former naturally desire to obtain as much labor as possible from their employees, while the latter are often induced by the fear of discharge to conform to regulations which their judgment, fairly exercised, would pronounce to be detrimental to their health or strength. In other words, the proprietors lay down the rules and the laborers are practically constrained to obey them. In such cases self-interest is often an unsafe guide, and the Legislature may properly interpose its authority." This language was approved by the Supreme Court of the United States in an opinion written by *Mr. Justice Hughes* in *R. R. v. Maguire,* 219 U. S., 552.

It is also competent to consider the fact that the option to accept benefits or sue is in the application for membership, and that the defendant has control of the department and prescribes its rules and regulations. It is true that it is the acceptance of benefits that bars the action, when free from fraud or undue influence, but this acceptance receives its vitality from the clause in the application for membership, or, as is said in the *Maguire case:* "The payment of benefits is the performance of the promise to pay contained in the contract of membership."

The situation of the employee at the time he accepts the benefits, his condition and surroundings, are relevant. Was it soon after his injury and while suffering, or was he surrounded by the employees of the company, with no opportunity to confer with relations or friends?

In Pom. Eq. Jur., vol. 2, sec. 948, it is said: "Whenever a person is in pecuniary necessity and distress, so that he would

be likely to make any undue sacrifice, and advantage is taken of such condition to obtain from him a conveyance or contract which is unfair, made upon an inadequate consideration and the like, even though there be no actual duress or threats, equity may relieve defensively or affirmatively." Note, however, that it is not pecuniary necessity and distress which are the basis of the equity jurisdiction, but it is taking advantage of this condition.

Again Pomeroy says, vol. 2, sec. 851: "Where there is no coercion amounting to duress, but a transaction is the result of a moral, social, or domestic force exerted upon a party, controlling the free action of his will and preventing any true consent, equity may relieve against the transaction on the ground of undue influence, even though there may be no invalidity at law. In the vast majority of instances undue influence naturally has a field to work upon in the condition or circumstances of the person influenced which render him peculiarly susceptible and yielding—his dependent or fiduciary relation towards the one exerting the influence, his mental or physical weakness, his pecuniary necessity, his ignorance, lack of advice, and the like. All these circumstances, however, are incidental, not essential."

The consideration paid to the employee is important, and may be controlling, but it is not to be determined alone by the amount of benefits paid to the employee, and the proportion this may bear to a fair compensation for his injury.

On the part of the employee it must be remembered that he has contributed to the fund out of which he is paid, and that the department has been established primarily for the benefit of the railroad and not as a charity, and that it has been relieved of liability for negligence in many instances, under its rules and regulations. On the part of the railroad, that the party injured is a member of the relief department, and as such is entitled, upon the payment of a small sum, to hospital treatment and benefits when sick or disabled, or when injured by accident, and to larger benefits at death; that to maintain the department it is necessary to keep up its membership; that the railroad has been compelled to expend large sums in operating expenses, and in contributions to the relief fund—if this ap-

pears. When due weight is given to these matters, and there is evidence that the consideration is inadequate, it is a circumstance which, in connection with other circumstances, may be submitted to the jury, and if grossly inadequate, it alone is sufficient to carry the question of fraud or undue influence to the jury. Pom. Eq. Jur., vol. 2, secs. 926-7.

At the last term, this Court said, in *Leonard v. Power Co.,* 155 N. C., 10, on this question: "In *Byers v. Surget,* 19 How., 311, the Supreme Court of the United States says: 'To meet the objection made to the sale in this case, founded on the inadequacy of the price at which the land was sold, it is insisted that inadequacy of consideration, singly, cannot amount to proof of fraud. This position, however, is scarcely reconcilable with the qualification annexed to it by the courts, namely, unless such inadequacy be so gross as to shock the conscience, for this qualification implies necessarily the affirmation that, if the inadequacy be of a nature so gross as to shock the conscience, it will amount to proof of fraud.' And again, in *Hume v. U. S.,* 132 U. S., 411, 10 Sup. Ct., 136 (33 L. Ed., 393): 'It (fraud) may be apparent from the intrinsic nature and subject of the bargain itself, such as no man in his senses, and not under delusion, would make on the one hand, and as no honest and fair man would accept on the other.' Our Court, speaking through *Justice Brown,* so declares the law in reference to awards and other transactions, in *Perry v. Insurance Co.,* 137 N. C., 406, 49 S. E., 890. He says: 'Where there is a charge of fraud or partiality made against an award, the fact that it is plainly and palpably wrong would be evidence in support of the charge, entitled to greater or less weight according to the extent or effect of the error and the other circumstances of the case. There might be a case of error in an award so plain and gross that a court or jury could arrive only at the conclusion that it was not the result of an impartial exercise of their judgment by the arbitrators. *Goddard v. King,* 40 Minn., 164, 41 N. W., 659. The settled rule, which is applicable not only to awards, but to other transactions, is that mere inadequacy alone is not sufficient to set aside the award; but if the inadequacy be so gross and palpable as to shock the moral sense, it is suffi-

cient evidence to be submitted to the jury on the issues relating to fraud and corruption, or partiality and bias.' Where there is inadequacy of consideration, but it is not gross, it may be considered in connection with other evidence upon the issue of fraud, but will not, standing alone, justify setting aside a contract or other paper-writing on the ground of fraud."

In the enforcement of these principles, relief should be granted with caution. If nothing appears except that the employee has signed the application for membership, the rules and regulations of the department that the employee was not with his friends and that the consideration is inadequate, but not grossly so, relief should be denied. The employee is required to exercise diligence in protecting his rights, and will not be excused on the ground of want of knowledge when he has the opportunity to learn.

If the issue of fraud or undue influence is found in favor of the employee, and he has been injured by the negligence of the railroad, he may recover damages, without returning what he has received as benefits, but this will be allowed in reduction of the damages. *Hayes v. R. R.,* 143 N. C., 125.

There must be a

New trial.

CLARK, C. J., concurs in the result upon the ground that the contract of the relief department of the defendant company is invalid because it is in violation of both the Federal and State statutes which have been passed for the protection of the employees of railroad companies. It is so held because a violation of the State statute, in *Barden v. R. R.,* 152 N. C., 318, and no reason has been shown, in my judgment, to overrule the able and well-considered opinion of the Court in that case which was written by *Mr. Justice Manning.*

The Fellow-servant Act of North Carolina of 1897, now Rev., 2646, giving employees of railroads an action for wrongful death or personal injuries caused by the negligence of the defendant or a fellow-servant or from defective machinery, ways, or appliances of a railroad company, provides: "Any contract or agreement, expressed or implied, made by any employee of such company to waive the benefit of this section shall be null and void."

KING *v.* R. R.

.Every employee of the defendant company is required to join this "relief department," and the contract which he signs upon entering its relief department contains this provision: "I also agree that in consideration of the amounts paid by the said company for the maintenance of the said relief department, and the guarantee by the said company of the payment of said benefits, the acceptance by me of benefits for injury shall operate as a release and satisfaction of all claims against said company and all other companies associated therewith in the administration of the relief department, for damages arising from or growing out of said injury."

This contract made prior to the injury is invalid because in violation of the express terms of the statute. It is also without consideration, for the evidence in this case does not show that the defendant in fact contributed any money to the department or for its maintenance. It appears from the rules and regulations that said relief department is a bureau of the defendant and that its rules and regulations are prescribed by the defendant. Also, that under those rules and regulations the defendant has sole control of the department and of its money; that the rules and regulations can be changed by the defendant without the consent of the members of the department, and cannot be changed without the consent of the defendant. It was admitted in the argument here and is a well-known fact that no employee of the defendant can remain in its service unless he is a member of this department. The so-called relief department was not established until after the enactment of the act of 1897, called the Fellow-servant Act.

From the above condensed statement of the evidence, it is clear that the sole object of the relief department is for the relief of the railroad company by requiring the employees of that company to raise by a forced contribution out of their salaries and wages a fund out of which all damages for personal injuries or wrongful death caused to employees by the negligence of the defendant shall be paid.

It is public policy as declared by statute that, in case of injury or death resulting to an employee from the negligence of a railroad company or of a fellow-servant, such loss shall fall

upon the company whose negligence caused it; and thus the stockholders will see that their officers and agents take proper steps to prevent such negligence and to safeguard by proper care the lives and limbs of its employees. This safeguard is entirely swept away by this device of a relief department whereby the employees are compulsorily required to raise out of their own meager wages a fund of $9 to $45 per annum from each employee, amounting in the aggregate to many hundreds of thousands of dollars annually, out of which fund the damages for the injuries and deaths which may be inflicted upon them by the negligence of the railroad company shall be paid. The defendant is the only railroad company in this State which has resorted to this device.

If, after an injury has been inflicted, there is a fair and free settlement made between the injured party and the company for the damages sustained by the negligence of the corporation, which damages are paid out of the funds of the company, it would be upheld by the courts. But such arrangement needs no previous agreement as is here required to be signed by each employee of the defendant company. Nor should such a settlement be made out of funds raised by involuntary contributions exacted by the company out of the wages of its employees. Nor is it a valid contract to impose upon plaintiff the loss of all he has paid in if he elects to sue or if he leaves the service.

The so-called relief department is also in violation of the Federal Employer's Liability Act of 22 April, 1908. That statute, after giving employees of any railroad company an action for injury caused by the negligence of any railroad company or of fellow-servants, or by reason of any defects in appliances, machinery, etc., provides:

"Sec. 5. *Any contract, rule, regulation, or device whatsoever,* the purpose or intent of which shall be to enable any common carrier to exempt itself. from *any liability created by this act,* shall to that extent be void."

The debates in both houses of Congress over the enactment of this section, as preserved in the *Congressional Record,* show that the object of this section was to prohibit these Relief Departments which had sprung up in the several States immediately

after the passage of State "Employers' Liability" acts, and which acts had been held valid by courts which, to say the least, were not unfriendly to these great aggregations of capital. The labor associations of the country were powerful enough to have their rights presented in the debates in Congress and to secure the enactment of the above section for their protection. If the above section does not have that effect the mind of man cannot conceive a form of words which will have that effect.

In a very recent case, decided by the United States Supreme Court, 30 October, 1911, *R. R. v. United States,* it was held that when the railroad company was operating a railroad which was "a part of a through highway over which traffic was continually being moved from one State to another," hauled over a part of its road five cars, the couplers of which were defective, two of the cars being used at the time in moving interstate traffic and the other three in moving intrastate traffic, though the use of the last three was not in connection with any car or cars used in interstate commerce, yet, the Federal liability statute applied to said three cars, and the defendant was liable to the penalty for not having automatic couplers thereon, because the act applies *"on any railroad engaged* in interstate commerce." If above decision is controlling, certainly the relief department of the defendant is forbidden by the Federal statute. While the three cars in the above case were not directly in use in interstate commerce, every employee of the defendant company is more or less connected in some way every day and hour with the transportation of through freight or passengers by this company which is "engaged in interstate commerce."

BROWN, J., concurring: I concur in the judgment of this Court granting a new trial, although I cannot concur in all that is said in the opinion.

1. I think it has been fully demonstrated in the opinion in this case by *Mr. Justice Allen,* as well as in my dissenting opinion in the *Barden case,* 152 N. C., 318, that the relief department agreement of the defendant company is valid, not against public policy, not a mere scheme upon the part of the

defendant to evade liability for its own negligence, and in proper cases should be enforced as a bar to actions for damages.

Similar articles of agreement have been in vogue in other parts of this country between other railway companies and their employees and have been invariably upheld. If overwhelming authority and unanimous judicial precedent are worth anything, then the legality of these relief associations and their articles of agreement ought no longer to be questioned.

This should be especially true in this State, for the reason that three successive Legislatures have thoroughly investigated this very relief department of the defendant company, have examined scores of its employees of all grades, and have refused to interfere.

That this is a matter addressed entirely to the wisdom and within the jurisdiction of the General Assembly is expressly declared by the Supreme Court of the United States in the *Maguire case,* 219 U. S., 550, where it is held: "Whether the relief scheme of a railroad company involving contracts with its employees and contributions from both employees and the company, such as the one involved in this case, is a wise and proper scheme which should be approved, or an unwise scheme which should be disapproved by the public policy of the State, is under the control of the legislative power of the State." If this relief association agreement had been found by our General Assembly to work an injustice or hardship to the employee, it would have been destroyed long ago.

2. This association does not deprive the employee of any legal right he has under the law, and does not attempt to. On the contrary, it confers upon him many benefits and privileges which the company is under no legal obligation to assist in providing. If the employee is sick or injured from any cause, with which the company is wholly disconnected, he may enter its hospitals and without expense be nursed back to health. When he is convalescent, but unfit to return to labor, he can draw a weekly allowance. There is an insurance feature by means of which the employee can provide for his family in case of death at a cost far less than that of ordinary insurance. In fact, the benefits to be derived from this association by its members

KING *v.* R. R.

are very great and cannot be well measured by a present cash equivalent. That is the reason that scores of the members have appeared before successive legislative committees and protested against its destruction by legislative enactment.

My opinion is that when a member is injured in the service of the defendant, and claims that his injury is due to negligence for which the defendant is responsible, he should consider well whether he will take the emoluments and benefits which membership in this association confers and continues through a long course of years, or whether he will give up those and sue the company for damages and take the chances of litigation.

The courts should be careful to see that, when the employee makes this choice, he is in a mental and physical condition and his surroundings are such that he may make a deliberate and voluntary choice, free from any overruling influence. It should be the voluntary act of the employee and the choice made when he is in fit condition to make a free choice. When he does make such election, then according to all the authorities, the employee should be compelled to abide by it. I do not think that under such circumstances, if he decides to remain in the association and take what it offers and abide by its regulations, the courts can look any further into the matter to see if the employee has received enough compensation or has made a wise choice. Being a member of the association, the employee is familiar with its advantages and knows beforehand exactly what it offers him. He also knows the uncertain fruits to be derived from a lawsuit. Therefore I think the Court errs in considering the matter as an adjustment, or a settlement in any sense.

It is simply an election. There are two courses open to the injured employee. He may elect to take either, but he cannot take both. And when he deliberately decides in the full possession of his faculties, knowing well what he does, and free from undue restraint or influence, that should end the matter so far as the courts are concerned. This is not only the consensus of all the authorities, but it is, to my mind, entirely consistent with the principles of justice and fairness.

3. All the evidence shows that this plaintiff, after he was injured in the shops, decided to "abide in the ·ship" and take

the benefits offered by the relief department. He filed the application voluntarily and complied with the regulations and for some few weeks he received his allowance regularly. I find nothing in the record to indicate any wrong, undue influence or oppression practiced on plaintiff to influence his decision. But there is evidence that before he was recovered, the allowance and benefits were arbitrarily and abruptly terminated and stopped by Dr. Wessell, an assistant surgeon of the relief department of the defendant, and without any notice to plaintiff or opportunity to be heard.

I am not aware that there is anything in the articles of agreement which conferred upon Dr. Wessell the right to terminate the plaintiff's benefits in such manner.

In order that this may be considered and inquired into on another trial, I concur in the order of the Court granting a new trial.

Mr. Justice WALKER concurs in this opinion.

HOKE, J., concurring: In *Barden v. R. R.*, 152 N. C., 319, and several other cases, where a similar question was presented, it was contended for the company that a receipt of benefits, under the provisions of the relief department, by an employee who was a member, should operate as an absolute bar to any action, by said employee, to recover damages for injuries caused by the negligence or other wrong of the company. Being of the opinion that to allow the receipt of benefits the effect contended for would, in nearly every instance, be in direct violation of our statute law, Revisal, sec. 2446, I concurred in the decision declaring the provision void. The statute in question enacts, in substance, that any employee of any railroad company operating in this State who shall suffer injury to his person, or the personal representative of any such employee who has, in the course of his employment, been killed by the negligence, carelessness, or incompetence of any other employee, or by any defect in the machinery, ways, or appliances of the company, shall be entitled to maintain an action against such company, and then concludes with the provision, "That any contract or agreement, expressed or implied, made by any employee of the company to

waive the benefit of this section shall be null and void." True, there are numerous decisions of the courts elsewhere that the receipt of benefits, under the provisions of this charter or scheme known as the relief department, shall operate as a bar to the action, basing their ruling, chiefly, on the position that the acceptance of benefits is in the nature of an adjustment after the injury; but, in my view, the position is untenable here, for the reason that to allow the receipt of benefits the effect of an absolute bar, resort must be had to the stipulations of the contract by which the injured employee became a member, and so comes directly within the prohibition of the statute referred to. While not directly presented, because the Court was upholding the provisions of the Federal statute as to companies engaged in interstate commerce avoiding a similar stipulation, this view was suggested in a recent case before the Supreme Court of the United States, *R. R. v. Maguire,* 219 U. S., at page 566, in which *Associate Justice Hughes,* delivering the opinion, said: "The acceptance of benefits is of course an act done after the injury, but the legal consequences sought to be attached to that act are derived from the provision in the contract of membership. The stipulation, which the statute nullifies, is one made in advance of the injury, that the subsequent acceptance of benefits shall constitute full satisfaction of all claims for damages," etc.

From the principle here suggested and on the view of this relief department and the acceptance of benefits under it which has been always heretofore presented, I am of opinion that the case of *Barden v. R. R., supra,* was properly decided and might be allowed to prevail now, as a correct and forcible statement of the law controlling the subject.

In the present cause, while disapproving *Barden's case* to the extent that it holds the provision in question absolutely void, the principal opinion by *Associate Justice Allen* now decides that the acceptance of benefits by an injured employee, having a right of action against the railroad company, whether regarded in the nature of a release or an accord and satisfaction, may be successfully assailed in the courts for fraud, undue influence, or oppression, and that, on such issue joined, the

entire facts may be presented, including the circumstances under which the employee became a member, as well as those more directly attendant upon the transaction, and that, in some instances, this fraud may be inferred when there is such gross disproportion between the amount received and the extent and value of the claim as to make it clear that no fair adjustment has been had nor one that in equity and good conscience should be allowed to stand. From this opinion and two on the same subject and under differing facts, by the same learned judge, at the present term, *Nelson v. R. R.* and *Wacksmuth v. R. R.,* I am convinced that a wise and workable rule has been found and established by which the beneficent features of this department may be preserved and proper and adequate relief afforded to injured employees having meritorious claims, and therefore concur in the opinion as written.