**SEABOARD AIR LINE RAILROAD COMPANY, Appellant and Cross-Appellee,**

v.

**Tom GILL, Administrator of the Estates of Jessie Thomas Long, deceased, and William Thomas Long, deceased, Appellee and Cross-Appellant.**

**No. 7037.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 11, 1955.

Decided Nov. 7, 1955.

Murray Allen and R. P. Upchurch, Raleigh, N. C., for appellant and cross-appellee.

B. T. Henderson, II, and J. C. Moore, Raleigh, N. C., (Charles H. Young, Raleigh, N. C., on brief), for appellee and cross-appellant.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The principal question in this case which we considered on a prior appeal, Gill v. Seaboard Air Line R. Co., 208 F. 2d 7, is whether certain releases given to the Railroad Company by the Administrator were secured by fraud. Three persons were killed when an automobile truck in which they were riding was struck by a Seaboard passenger train on January 16, 1951 at a grade crossing near Henderson, North Carolina. They were respectively the son, the daughter-in-law and one of the ten grandchildren of Tom Gill, an illiterate farmer unable to read, who lived nearby. He attended the coroner's inquest and thereupon a lawyer was found for him who took him to the county seat and had him appointed administrator for each of the three estates of the deceased. The lawyer was not employed to prosecute claims against the Railroad growing out of the accident, and he assumed no responsibility in this respect. He served merely to secure the qualification of an administrator to execute releases discharging the Railroad Company from liability for the death of the deceased.

Three days after the accident Gill went to the office of the attorney for the Railroad Company and signed three releases, two for $300 each, and one for $350, as administrator of the three estates, releasing the Railroad Company from liability. He testified at the first trial that he signed the documents but that they were not read to him and he did not understand that he was releas-ing the company, but was told that the purpose was to cover the funeral expenses of the deceased, and that the rights of the surviving children would be considered at the next term of court. The checks, however, aggregating the sum of $950, bore the statement that they were given in full settlement of all claims arising from the deaths. They were endorsed by Gill and handed to the undertaker who retained $750 for his services, and paid the balance to the attorney as a fee. There was explicit testimony on behalf of the Railroad Company that the papers were read to Gill and that it was explained to him that the checks were given in full settlement of all claims.

The case was submitted to the jury at the first trial upon the issues of the negligence of the Railroad Company, the contributory negligence of the driver of the truck, the understanding of Gill as to the nature and effect of the releases, and the amount, if any, that he was entitled to recover from the Railroad Company as administrator of the estates. The jury found that both the Railroad Company and the driver were guilty of negligence and that his administrator was entitled to recover nothing, but that the administrator was entitled to recover $1500 for the death of the wife and $2500 for the death of the son in the other cases. After the trial upon appropriate motions of the defendant the court set aside the verdict in favor of the administrator as to the execution of the releases and entered judgment for the defendant in all the cases. Upon the first appeal we held that the judgment in favor of the Railroad Company in the case of William O. Long, the driver of the car, should be sustained since there was evidence to support the conclusion that the negligence of the Railroad Company and the negligence of the driver both contributed to the accident; but we also held that the other cases should be remanded to the District Court for a second trial upon the question of the validity of the releases. At the first trial the court submitted an issue as to

whether the administrator executed the releases without understanding their nature and effect, and the jury answered this inquiry in the affirmative, but this finding was set aside by the District Court on the ground that the jury's answer may have been based upon the finding that the releases were signed by mistake on Gill's part alone and that a unilateral mistake, unaccompanied by fraud or like circumstances, is insufficient in North Carolina to avoid a contract. We held, however, that the judge should have submitted to the jury the specific issue tendered by the plaintiff as to whether the execution of the releases was procured by fraud or undue influence, and the case was remanded for retrial on this question.

■ When the case went back this issue was submitted and the jury again found in favor of the administrator. The contention is now made that there was no evidence to support the findings. The District Judge rejected this contention and in our opinion this ruling was correct. We held in our first opinion that the evidence at the first trial was sufficient to justify the submission of the issue, and since the evidence on this point at the second trial was substantially the same as at the first, there is no occasion for further discussion of the matter at this time.

■■ It is next objected by the Railroad Company that the verdict of the jury should not be sustained because it was uncertain and ambiguous in that the question was submitted in the alternative, whether the releases were procured by fraud or undue influence, and the jury merely answered the question in the affirmative. The objection is entirely lacking in merit. It is true that if an issue is framed in an alternative which proposes different or inconsistent theories, and the answer of the jury is a simple yes or no, the verdict may be so ambiguous that it will not support a judgment. See Edge v. North State Feldspar Corp., 212 N.C. 246, 193 S.E. 2; Gibson v. Central Mfrs' Mut. Ins. Co., 232 N.C. 712, 62 S.E.2d 320. But

that is not the case here. The closeness of fraud and undue influence was shown in the charge of the court when the judge without objection told the jury that undue influence is a fraudulent overreaching of the mind of another which induces him to take action materially affecting his rights which he would not otherwise perform. It is plain from the record that both counsel and jury clearly understood that the question for decision was whether the administrator had been tricked into signing a complete release in the brief that the claims against the Railroad Company would be given full consideration at a later date, and the meaning of the jury's answer is not open to doubt.

■ The appellant finds fault with a portion of the charge in which the judge told the jury that gross inadequacy of consideration standing alone is sufficient evidence to sustain the allegation of fraud and undue influence, provided it is so inadequate as to shock the conscience or the moral sense of right and wrong. In another part of the charge, touching upon the same question, the judge said that inadequacy of consideration alone is not sufficient to set aside a written instrument unless the consideration is so inadequate as to shock the moral senses, and cause reasonable persons to say that the releases were obtained for nothing. He added that inadequacy of consideration although not gross is a proper circumstance to be considered upon the issue of fraud in connection with other evidence and circumstances sufficient to show fraud. The appellant contends that the effect of this instruction was to divert the attention of the jury from the other evidence in the case if they found that the amounts paid the plaintiff were grossly inadequate. We think the contention is without merit. Not only did the judge refer in general terms to the other evidence in the case, as above shown, but he took pains to refer in detail to the evidence on the part of the Railroad Company which tended to show that the releases were carefully read to the administrator and that he was ex-

plicitly told that the monies paid were in full and complete settlement of all claims. Moreover, the charge is in accord with the law of North Carolina, as laid down in Butler v. Armour Fertilizer Works, 195 N.C. 409, 142 S.E. 483.

Other contentions of error on the part of the trial judge are raised in the appellant's brief and they have been considered, but they are so clearly untenable as to be unworthy of discussion in this opinion.

A cross appeal was filed by the administrator complaining of an order of the District Judge that the defendant be allowed a credit on the judgments for the sums paid when the releases were signed, that is to say, a credit of $300 on the judgment for $1500 in favor of the administrator in the case of Jessie Thomas Long, and a like credit on the judgment of $2500 for the death of her son William Thomas Long. These credits represented the monies paid to the administrator when the releases were executed. We think that these deductions should not have been made. The jury at the first trial, having heard all the evidence in regard to the sums paid to the administrator, found by their verdict that he was entitled to the sums of $1500 and $2500 respectively, in answer to the question in each case as to what amount the plaintiff was entitled to recover of the defendant on account of the death of the deceased. Since all of the matters concerning these payments were brought to the jury's attention, it is reasonable to assume that the jury took into account the monies which the administrator had already received in determining the amounts which he should recover from the Railroad Company. In Hayes v. Atlanta & C. Air Line R. Co., 143 N.C. 125, 55 S.E. 437, and King v. Atlantic Coast Line R. Co., 157 N.C. 44, 66, 72 S.E. 801, 48 L.R.A., N.S., 450, the general rule is stated to be that when money is paid for releases subsequently set aside for fraud, it should be deducted—if the releasor afterward recovers damages; but in these cases, unlike the case at bar, the jury

had not passed on the amount due to the plaintiff with the opportunity to take into account the money he had already received. We find nothing in these cases at variance with the conclusion which we have reached.

The judgment of the District Court will be sustained insofar as it supports the findings of the jury as to the invalidity of the releases; but the judgment will be reversed insofar as it allows a credit to the defendant for the sums paid to the administrator at the time the releases were executed, and the case will be remanded with instructions to enter judgments in favor of the administrator for the sums determined by the jury's verdicts.

Affirmed in Part, Reversed in Part, and Remanded.