HAYES v. RAILROAD.

(Filed November 21, 1906).

*Accord and Satisfaction—Pleadings—Release—Fraud— Return of Consideration.*

1. Where there is an agreement to settle a controverted demand for a consideration fixed by the parties, all or a portion of which is executory, the defendant may set it up, by making proper averments in regard to performance,. as an accord and satisfaction of the original demand.

2. In an action for damages for personal injuries, where defendant alleged that for a stipulated amount which had been paid, plaintiff executed a full release, and plaintiff in reply admitted the receipt of the money, but denied that the alleged release contained the terms of the settlement, averring that the provision that he was to have a lifetime job was omitted by fraud in the *factum* of defendant's agent, and there was evidence of the alleged negligence and fraud, the Court erred in nonsuiting plaintiff.

3. If one be illiterate, unable to read, and the paper-writing be read to him falsely, that is, otherwise than it is written, and he sign it, such paper-writing shall not be his act or deed.

4. In an action for damages for personal injuries, where the defendant set up a release as an accord and satisfaction, the plaintiff is not required to return the money received before setting up the plea that the release was procured by fraud in the *factum;* but if he recovers damages the amount paid him will be deducted.

ACTION by Samuel Hayes against Atlanta and Charlotte Air Line Railway Company, heard by *Judge Henry R. Bryan* and a jury, at the March Term, 1906, of the Superior Court of MECKLENBURG.

This was an action for the recovery of damages for personal injury. The defendant denied plaintiff's right to recover, and by way of defense and accord and satisfaction alleged that plaintiff on 2 October, 1902, in consideration of the sum of $125 paid him, and an amount agreed upon, paid his counsel, executed a release in full and final settlement and satisfac-

tion of any and all injuries, damages, etc., caused from the accident. The plaintiff, by way of reply, alleged that some time after the injury the agent of defendant company proposed to settle with him and offered to give plaintiff a position with the Southern Railway Company, which would afford a living to him and his family during his life, and in addition pay him $125 to live on until he should be able to go to work. That plaintiff accepted said proposition. That thereupon said agent tendered to plaintiff a paper-writing, to be executed, which he represented to plaintiff as containing the terms and provisions of said proposition, and plaintiff, being unable to read for himself and relying upon the truth of said proposition, executed said paper-writing by making his mark, and thereupon received the sum of $125 in money. That he thereafter requested defendant to give him the position promised, which it failed and now refuses to do. That if defendant holds a release, or what purports to be a release, from the plaintiff, as alleged, the same was procured by the false and fraudulent representations of defendant's agent.

Plaintiff testified that after the injury had been sustained and suit was brought therefor in Atlanta, in which he had submitted to a *nonsuit,* that he executed a paper-writing presented to him by the agent of defendant corporation. In respect to this he said: "I signed a release to the company. Mr. Stracham saw me about it; he was working for the railroad; he came over to Gastonia two or three times after I was hurt. It was a good while after I was hurt before he spoke about the release. He said he would give me $125 and a lifetime job watching railroad crossings somewhere; this was in the waiting-room at Gastonia. The next time I saw him he came over there on 39 and brought me over here with him on 36; asked me if I had made up my mind to sign the release. He said he was going to Salisbury. I was going up the main street in Charlotte; met Mr. Torrence, policeman,

who told me Mr. Stracham was looking for me. We went to the depot, found Mr. Stracham; he wrote my name and told me to touch the pen, and had Mr. Torrence to sign. Walter Dick also signed it as a witness. When I signed it I asked Mr. Stracham to read it over. He said it was no use to read it, but read a part of it to me. He read this: 'Sam Hayes was to have a lifetime job on the Southern that will pay him $25 a month—a lifetime job.' He gave me a pass and I went back home. He paid me the $125. I went to Atlanta before I signed any paper; went on a pass furnished by the company. I went down there four times. I went down there to withdraw a case I had against the Southern."

Upon cross-examination he said: "Mr. Stracham told me that he would pay me $125 and give me a lifetime job watching crossings. He paid me. I kept the money, never returned it; I signed the paper. Part of paper was read to me—that Sam Hayes is to have a lifetime job. I agreed with Mr. Stracham that if they would give me $125 and give me a lifetime job this was to be a compromise for the loss of my leg. He was representing the Southern Railroad. He told me to report to Mr. Baker when I got ready to work. I had employed Mr. Mangum to represent me and talked to him about representing me. Erwin went with me to Arnold & Arnold in Atlanta. He is a brother of Robert Erwin, who lives in Gastonia. I did agree to compromise this matter for $125; signed a paper to that effect, and a lifetime job. I got the money and have never given it back."

There was evidence in regard to the alleged negligence and the injury sustained by plaintiff. Upon the conclusion of the plaintiff's evidence, his Honor, upon motion of defendant, directed judgment of nonsuit. Plaintiff excepted, and appealed.

*Pharr & Bell* and *A. G. Mangum* for the plaintiff.
*L. C. Caldwell* for the defendant.

CONNOR, J., after stating the case: We concur with counsel for defendant that where there is an agreement to settle a controverted demand for a consideration fixed by the parties, all or a portion of which is executory, the defendant may set it up by making proper averments in regard to performance as an accord and satisfaction of the original demand. In this case if there were no controversy in regard to the terms of the agreement to release, we should not hesitate to hold that the defense was complete and that plaintiff would be compelled, for any breach of the contract, to sue upon that cause of action. While for manifest reasons we could not compel specific performance of the contract of employment, the plaintiff could recover damages for its breach. The difficulty in fixing the amount would not affect his right of action. The authorities cited in defendant's brief sustain the contention made by counsel in that respect. The principle is well stated in *Laughead v. Coke Co.*, 209 Pa. St., 368 (103 Am. St., 1014): "It is no doubt true that when the accord is founded upon a new consideration and is accepted as satisfaction, it operates as such, and bars the remedy on the old contract. There is an obvious distinction between an engagement to accept a promise in satisfaction and an agreement requiring performance of the promise. If the promise itself, and not its performance, is accepted in satisfaction, this is a good accord and satisfaction without performance."

The difficulty which we find in this appeal is that plaintiff alleges that he was to receive a certain amount in cash and to have the promise or obligation of the defendant to employ him, etc. This defendant denies. If plaintiff's contention be correct, and defendant, by fraud of its agent, has procured the execution of the release, omitting this most valuable portion of the consideration, it is in no position to rely upon the release as executed—and it offers nothing more.

The plaintiff alleges that there is fraud in the *factum*—that, being illiterate, the paper-writing which he signed was

falsely read to him, and that he signed it believing that it contained the terms of the agreement as made by him. He testifies to his allegation. If the jury should find with his contention, the release is utterly void. It does not truthfully set forth the agreement upon which the accord and satisfaction is based.

In the cases cited and relied upon by defendant, *supra*, it is said: "The receipt was in full and was a receipt for unliquidated damages upon a disputed claim, and as such became final and conclusive because not successfully impeached for fraud, accident or mistake." The plaintiff, if so advised, could have asked equitable relief by way of reforming the instrument, so that it would conform to the agreement as he alleged it to be. Instead of doing so, he denies that he, knowingly, executed such a paper-writing.

It is well settled that if one be illiterate, unable to read, and the paper-writing be read to him falsely, that is, otherwise than it is written, and he sign it, such paper-writing shall not be his act and deed. This is elementary. *Furches, C. J.,* in *Cutler v. Railroad,* 128 N. C., 477, after stating the rule regarding fraud in the treaty, says: "If the plaintiff had required it to be read, and F had read it falsely, it would have been a fraud in the *factum.*" *Judge Battle,* in *McArthur v. Johnson,* 61 N. C., 317, after giving an illustration of a fraud in the *factum,* says: "Another instance is afforded by the case of a deed executed by a blind or illiterate person, when it has been read falsely to him upon his request to have it read." The language of the present *Chief Justice,* in his concurring opinion in *Cutler's case, supra,* is decisive of this appeal: "The misrepresentations here are not as to matters in the treaty * * *, but as to the contents of the deed drawn by one of them which the other could not read without his glasses, and who, at the same time, was urged to sign at once without going for his glasses." *Dorsett v. Mfg. Co.,* 131 N. C., 254; 24 Am. and Eng. Enc., 318.

143—9

There was competent evidence to be submitted to the jury, tending to sustain and, if believed, establishing plaintiff's contention.

The defendant, however, insists that plaintiff must, before setting up the defense, return the money which he has received. Whatever may have been required, if he had sued to cancel the instrument for fraud in the treaty, we do not think that he is required to return the money before setting up the plea of fraud in the *factum*. He is asking no equitable relief, but simply insisting that the paper-writing, relied upon by the defendant, is not his act and deed; and, as we have said, if he is correct in this, the defendant's plea of accord and satisfaction has nothing upon which to stand. If the issue be found in his favor and he recover damages, of course the amount paid him will be deducted. If, on the contrary, the jury find against his contention, the defendant's plea of accord and satisfaction is sustained, thus putting an end to the case.

We have not considered the exceptions in the record pointing to his Honor's rulings upon questions of evidence, nor do we pass upon the controverted questions in respect to the plaintiff's right to recover upon his allegation of negligence. As the judgment of *nonsuit* does not state the reasons upon which it is based, we assume that his Honor was of the opinion that the defendant was barred by his release. The controversy in this respect, as we have seen, can only be settled by a verdict of the jury, and there must be a

New Trial.