WILLIAM A. FAGAN, RESPONDENT, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, APPELLANT.

Submitted March 22, 1920—Decided June 14, 1920.

1. On appeal, in passing upon a motion for the direction of a verdict, the court cannot weigh the evidence, but must take as true all evidence which supports the view of the party against whom the motion is made, and must give him the benefit of all legitimate inferences which may be drawn therefrom.

2. Where the existence of negligence depends upon the conclusion to be drawn from a variety and combination of circumstances considered in their relation to and their reaction upon each other, the jury, and not the court, is normally the tribunal to draw such conclusion.

3. In order to charge an employe with the assumption of a risk attributable to a defect in the place of work, or in the appliances, or in the system or method of work, due to the employer's negligence, it must appear not only that he knew (or is presumed from its obviousness to have known) of the defect, but that he knew it endangered his safety, or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it.

4. The question of assumption of risk is for the jury unless the evidence tending to show such assumption of risk is clear and from unimpeached witnesses and free from contradiction.

5. Where plaintiff was put to work upon an electric truck and trailer engaged in the transportation of merchandise from a pier to a float, and the evidence tended to show (1) that he was unfamiliar with the work and was given no instruction with respect thereto; (2) that the trailer was improperly loaded, the usual guard rail at the front of the trailer absent, the usual "race piece" between the gang plank and the pier and designed to facilitate a smooth passage, not in place, for which conditions the defendant was responsible, and (3) that the load fell and injured the plaintiff because of such defects, as the trailer was hauled off the pier by the truck driven by another employe, the question of the negligence of the defendant was for the jury; as was likewise the question whether the plaintiff assumed the risk, it further appearing (a) that it was open to the jury to find from the evidence that the plaintiff was not present at the loading; (b) that it was no part of his duty in the circumstances to look after the loading or the condition of the appliances, and (c) that he did not know of the defects therein.

6. Where the evidence tended to show that the plaintiff, very severely injured and "awfully sick," was met on his way home from the hospital by the defendant's claim agent, whom he asked

for "transportation" home, and was told that the defendant would give him "$80 for ten weeks' half pay," and that plaintiff then inquired, "Why not give it to me every two weeks like you did the colored fellow?" and was answered, "We don't do that any more—I will give it to you every ten weeks in a lump sum," and that the agent then gave him $85 and had him sign a paper, which he told him was "a receipt for it," but which in fact was a release of all claims—it was open to the jury to find that the release was procured by fraud by knowingly inducing the plaintiff to believe that he was signing merely a receipt for a partial payment under the New Jersey Workmen's Compensation act, it appearing that the evidence also tended to show that the plaintiff did not read the paper; that it was not read to him; that he did not know it was a release of all claims, and that the agent told him that the defendant was not liable under the Federal Employers' Liability act.

7. Where the evidence tended to show that the defendant's agent knowingly induced the plaintiff to sign a release of all claims for damages by falsely representing that it was merely a receipt for partial payment, the question whether the plaintiff is bound by the release is for the jury, and the fact that the plaintiff wrote above his signature "I have read the above and understand it," and the fact that he would have discovered the fraud alleged to have been perpetrated upon him if he had not negligently failed to read the paper, are not in themselves a sufficient reason for directing a verdict, but are only additional circumstances for the consideration of the jury in determining whether the defendant's agent intentionally deceived the plaintiff into believing that the paper was a mere receipt for partial payment and not a release.

On appeal from the Monmouth County Circuit Court.

For the appellant, *George Holmes* and *DeVoe Tomlinson.*

For the respondent, *Wight, Wight & Golenbock* and *Merritt Lane.*

The opinion of the court was delivered by

TRENCHARD, J. This action was instituted under the Federal Employers' Liability act (35 *Stat. at L., p.* 65, *ch.* 149; *Comp. Stat.* 1913, § 8657) to recover damages for personal injuries sustained by the plaintiff while employed by the defendant as a freight handler at Pier 10, North river, New York City.

The verdict below was for the plaintiff, and this appeal brings up the judgment entered thereon.

We are of the opinion that it should not be disturbed.

We think that the motion for a direction of a verdict for the defendant was rightly denied.

In support of the motion it was urged in the court below, and is argued here, that there was no evidence of negligence upon the part of the defendant. But we think there was.

Prior to the accident the plaintiff had been employed on the pier in operating a small hand truck only. The evidence tended to show that on the day in question he was directed for the first time to assist in transporting merchandise from the pier to the float lying alongside, by means of a trailer truck hauled by an electric truck. The evidence tended to show that he had never worked upon an electric truck or trailer before. It tended to show that the trailer (with electric truck attached) had been loaded by other employes of the defendant with heavy crates of pineapples, and then, without any instruction with respect to the manner of doing the work, the plaintiff was directed to "get on that truck." It tended to show that he "put one foot on the electric truck and one on the pin of the trailer" to balance himself (the position usually assumed by a man engaged in such work), and while he was in that position the electric truck (operated by another employe) hauled the trailer from the pier to the float. He further testified that "when it left the dock to go onto the float and struck the gang plank it shook the merchandise in the trailer and that commenced to come over on me, and I put my hand over this way to keep them from coming down, and the weight of them came over on me, straightened me out and tore this hip out of my body and mashed my leg and my foot was paralyzed." The evidence also tended to show that the crates were piled seven feet high on the trailer, which was unusual; that there was no guard rail on the front of the trailer—the one usually there having been removed; that the usual "race piece" designed to facilitate a smooth passage from the pier to the gang plank was not in place, and that the

accident was caused by these defects, for which the defendant was responsible.

The fact that it was also open to the jury to have found contrary conclusions as to the various matters of fact is immaterial, because, in passing upon a motion for the direction of a verdict, the court cannot weigh the evidence, but must take as true all evidence which supports the view of the party against whom the motion is made, and must give him the benefit of all legitimate inferences which may be drawn therefrom. *Andre* v. *Mertens,* 88 *N. J. L.* 626.

Where, as here, the existence of negligence depends upon the conclusion to be drawn from a variety and combination of circumstances considered in their relation to and their reaction upon each other, the jury and not the court is normally the tribunal to draw such conclusions. *Sutton* v. *Bell,* 79 *N. J. L.* 507.

It is also contended that the motion for a direction should have been granted because the plaintiff assumed the risk. We think not.

While an employe assumes the risks and dangers ordinarily incident to the employment in which he voluntarily engages, so far as these are not attributable to the negligence of the employer or those for whose conduct the employer is responsible, the employe has a right to assume that the employer has exercised proper care with respect to providing a reasonably safe place of work, reasonably safe appliances, and a reasonably safe system or method of work, and is not to be treated as assuming a risk that is attributable to the employer's negligence until he becomes aware of it, or it is so plainly observable that he must be presumed to have known it. *Chesapeake and Ohio Railroad Co.* v. *Proffitt,* 241 *U. S.* 462. Moreover, in order to charge an employe with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed from its obviousness to have known) of the defect, but that he knew it endangered his safety, or else such danger must have been so obvious that an ordinarily prudent person, under the circumstances, would have appreciated it. *Gila Valley, &c., Ry. Co.*

v. *Hall,* 232 *Id.* 94. The question of assumption of risk is for the jury unless the evidence tending to show such assumption of risk is clear and from unimpeached witnesses and free from contradiction. *Kanawha, &c., Ry. Co.* v. *Kerse,* 239 *Id.* 576.

Tested by these rules the question of assumption of risk in the present case was properly submitted to the jury. We have pointed out that the evidence tended to show (1) that he was unfamiliar with the work on the electric truck and trailer to which he was assigned without instruction; (2) that he was not present at the loading of the trailer which, it was open to the jury to find, was negligently done; (3) that he did not know of the absence of the guard rail or the absence of the race piece until the load began to fall, and (4) that, in the circumstances, it was no part of his duty to see that the trailer was properly loaded or that the guard rail and "race piece" were in place. In this situation, the question whether these defects were so obvious that he must be presumed to have known of them, and whether if known to him the danger was so obvious that he would have appreciated it, were for the jury.

The defendant, however, further insisted at the trial, and urges here, that the plaintiff, in consideration of $85, released the defendant from all claims on account of the injuries upon which this action is based, by signing a paper-writing to that effect, and this question also was raised by the motion for a direction.

But we think that question was properly submitted to the jury.

It appeared, clearly, that the plaintiff was very severely injured, and, after five weeks in the hospital, he was taken in a roller chair to the defendant's terminal in Jersey City, on his way home, where he was met by the defendant's claim agent. The plaintiff testified, and it was open to the jury to find, if they chose, that he was "awfully sick" and wanted to get home "in the worst way" and asked for "transportation;" that the claim agent said, "We will give you $80 for ten weeks' half pay," and the plaintiff inquired, "Well, why not give it to me

every two weeks, like you did that colored fellow down in the Broadway tower?" that the claim agent answered, "We don't do that any more—I will give it to you every ten weeks in a lump sum;" that the claim agent then gave him $85 and "put a paper in front of me and told me to sign a receipt for it; so I did;" and that the claim agent then told the plaintiff to come back in ten weeks for more money. The plaintiff further testified, in effect, that he did not read the paper— that it was not read to him and that he did not know it was a release of all claims.

This testimony tended to show that the defendant's agent knowingly induced the plaintiff to believe that he was signing a receipt for an installment of compensation under the New Jersey Workmen's Compensation act, and not a release of all claims against the defendant. This view is strengthened by the admission of the claim agent that he told plaintiff that the defendant was not liable to him under the Federal Employers' Liability act, and by the additional fact that $85 was grossly inadequate compensation for the plaintiff's injury.

We, therefore, conclude that it was open to the jury to find that the release was procured by fraud.

Now, although, as a general rule, the affixing of a signature to a contract creates a conclusive presumption against the signer that he read, understood and assented to its terms, yet this rule has one notable exception, viz., where the signature was procured by fraud or imposition practiced upon the signer with intent to deceive him as to the purport of the paper which he signs. And where, as here, the evidence tends to show that the defendant's agent knowingly induced the plaintiff to sign a release of all claims for damages by falsely representing to the plaintiff that it was merely a receipt for a partial payment, the question whether the plaintiff is bound by the release is for the jury, and the fact, if it be a fact, that the plaintiff wrote above his signature, "I have read the above and understand it," and the fact that he would have discovered the fraud alleged to have been perpetrated upon him if he had not negligently failed to read the paper, are not in themselves a sufficient reason for directing a verdict, but are

merely additional circumstances for the consideration of the jury in determining whether the defendant's agent intentionally deceived the plaintiff into believing that the paper was a mere receipt for partial payment and not a release of all claims. *Dunston Lithographing Co.* v. *Borgo*, 84 *N. J. L.* 623; *Fivey* v. *Pennsylvania Railroad Co.*, 67 *Id.* 627; *Alexander* v. *Brogley*, 63 *Id.* 307.

We believe that the foregoing conclusions, in effect, dispose of all questions raised and argued which seem to merit remark.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 13.

*For reversal*—None.