ALFRED PAUL, PLAINTIFF-RESPONDENT, v. ALEXANDER FLANNERY AND MARY FLANNERY, DEFENDANTS-APPELLANTS.

Submitted February 13, 1942—Decided May 19, 1942.

For the respondent, *Pesin & Pesin* (*Meyer Pesin,* of counsel).

For the appellants, *Foley & Francis* (*Gerald T. Foley,* of counsel).

The opinion of the court was delivered by

RAFFERTY, J. This appeal is from a judgment entered upon jury verdict in the Hudson Circuit of the Supreme Court.

The action grew out of an automobile accident occurring at Union City, Hudson County, on October 14th, 1939. Plaintiff testified that he was operating. his motorcycle southerly on Bergenline Avenue, and upon approaching the intersection of that avenue with Fifteenth Street, he reduced speed to approximately four miles per hour, made an observation to his left, or easterly, down Fifteenth Street, and observing no traffic coming from that direction made another observation to his right, or westerly, and continued across the intersection. He had gotten into the intersection when his motorcycle collided with an automobile owned by Mary Flannery and operated by Alexander Flannery, her husband.

Because of an obstruction plaintiff could see only 100 feet easterly. His motorcycle was damaged and he and a passenger were thrown therefrom and suffered certain injuries. A disinterested witness testified that she heard the crash and came upon the scene immediately, at which time she observed defendants' automobile stopped some distance down the street and defendant Alexander Flannery getting out of the car.

For defendants it was testified that Alexander Flannery was operating the automobile owned by his wife, Mary Flannery, in a westerly direction on Fifteenth Street; that upon approaching this intersection he made an observation to his right down Bergenline Avenue, he being able to see for a distance of 150 feet down that avenue, and observing no traffic he proceeded across the intersection at a speed of from 15 to 20 miles per hour and as he reached the westerly crosswalk on Fifteenth Street the motorcycle collided with the right side of the automobile at about the center of the car. Mr. Flannery testified that he stopped the automobile immediately and within a car length and, explaining the fact that plaintiff's witness had seen his car some distance down the street, he testified that it was necessary for him to remove his car farther down the street because of parked automobiles at the curb. Thus it will be seen that the matter is a typical intersection accident case.

Mr. Flannery testified respecting the ownership of the automobile, and which is not disputed, that he purchased the automobile with his personal funds and made a gift of the machine to his wife; that the car was habitually used by members of the family, but that on the day of the accident he was using it for his exclusive purposes. He had used the automobile on his employment throughout the day and, being on his way home, he intended to make purchases of provisions for his household and thereafter to proceed home.

Motions for nonsuit and direction of verdict made in behalf of defendants were properly denied as to Alexander Flannery, but the failure to direct verdict in favor of Mary Flannery was error.

It is argued that these denials of motion were erroneous in law on the ground that there was no evidence of negligence

on the part of defendants and that plaintiff was guilty of contributory negligence as a matter of law. Obviously there is no merit in the first of these grounds. As to the second ground, a factual issue existed also. According to plaintiff's testimony he exercised the requisite degree of care and it is not denied that he could see no farther than 100 feet easterly on Fifteenth Street. Other testimony on behalf of plaintiff indicated that defendants' automobile was operated at a high rate of speed and made a jury question of the issue, thereby precluding the trial court from making a finding of contributory negligence as a matter of law.

Some time after the accident representatives of defendants sought to negotiate an adjustment of plaintiff's claim, as a result of which plaintiff executed a general release in the amount of $300 and received therefor one draft made to the order of the hospital where plaintiff was treated, and plaintiff, in the amount of $100, upon the face of which was the endorsement "In full settlement (together with draft No. 30220 and No. 30221) of any and all claims in the case of Paul vs. Flannery." Plaintiff testified that this particular draft was placed in an envelope and he was instructed to deliver it to the hospital, where he would receive change for the difference in the amount of the draft and the hospital bill. Plaintiff knew that this draft was in the amount of $100, but aside from endorsing the draft at the hospital cashier's window he did not otherwise see the draft. Defendants' witness did not recollect whether or not this draft was placed in an envelope as testified by plaintiff. Two other drafts, as above indicated, each in the amount of $100, were also delivered to plaintiff, but these were not in an envelope and on the face of each it is stated "In part settlement of any and all claims in the case of Paul vs. Flannery." On the back of each draft there was the usual printed form of release and plaintiff had endorsed his name immediately thereunder.

It was contended for defendants that plaintiff had thereby released his cause of action and had received full payment therefor. Plaintiff denied this and testified that the settlement agreed upon was in the total sum of $1,000 and that he had been advised upon signing the release, which he did not

read, by the agent of the insurance company who effected the settlement, that this agent had no authority to sign drafts in excess of $100, that the release was actually merely a receipt for the $300, and that because of the expressed needs of plaintiff the agent had received special authority to issue the three $100 drafts on account and the remainder would be forthcoming from the general office of the insurance company within a short time. Having waited several weeks plaintiff telephoned the agent as to when he might expect the balance, when he was advised that there was no balance due and that he had released his claim for $300. The execution of the release, plaintiff argued, was therefore a fraud upon plaintiff and that the release was not in fact his deed. Upon this conflict of evidence the trial court properly left the question with the jury. The facts herein are quite similar to those in *Fagan* v. *Central Railroad Co.*, 94 *N. J. L.* 454, 458, and are ruled thereby. The cases cited in appellant's brief are not to the contrary.

It is argued also on behalf of appellant that the trial court committed error in failing to instruct the jury in accordance with defendants' request that if the plaintiff is entitled to recover at all, his recovery must be limited to the sum of $700, the balance between the $300 admittedly paid and the $1,000 which plaintiff insisted was the amount of the agreed settlement. The gist of this argument is that if the case was settled as plaintiff contended it was, that he had thereby surrendered his cause of action based upon negligence and was limited to sue upon the contract of settlement. But this does not follow because the denial by defendants of the making of the $1,000 settlement was a repudiation thereof and plaintiff was at liberty to accept that repudiation and sue upon his original cause of action. The trial court properly denied this request to charge.

Appellant insists that it was the duty of respondent to return the $300 paid as above stated before he could maintain the present action, citing *Burik* v. *Dundee Woolen Co.*, 66 *N. J. L.* 420. This case does not support appellant. The contention of plaintiff was that the release was not intelligently signed and was not plaintiff's deed and the jury ver-

dict affirmed this contention. Hence the cited case supports respondent here and plaintiff below was not obligated to return the money paid.

In its charge the trial court properly directed the jury to take into consideration, should it find a verdict for plaintiff, the payment of $300 already made to plaintiff.

However, there must be a reversal as to defendant Mary Flannery. The presumption that Mr. Flannery operated the automobile as the agent of Mrs. Flannery was rebutted by the testimony before referred to as to the use of the car. Respondent argues that because Mr. Flannery was on his way to purchase provisions for his home at the time of the accident his operation of the car fell within the "family purpose" doctrine, citing *Doran* v. *Thomsen, 76 N. J. L.* 754, and *Missell* v. *Hayes,* 86 *Id.* 348, as authority therefor. The obvious distinction to be made is that in this case Mr. Flannery was effecting his mission of purchasing family provisions in fulfillment of his primary and exclusive responsibility in this regard. *Missell* v. *Hayes, supra* (at *p.* 350), in treating of the father's duty, states: "* * * it was his business to furnish them with food and clothing * * *." This being so, Mr. Flannery was operating the automobile at the time of the collision on his personal business and, in no sense within the family purpose doctrine as laid down in the cited cases and judgment was erroneously entered against Mrs. Flannery.

The judgment against Alexander Flannery is in all respects affirmed, and the judgment against Mary Flannery is reversed.

*For affirmance*—DONGES, J.  1.

*For affirmance as to Alexander Flannery*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BODINE, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ.  13.

*For reversal as to Mary Flannery*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BODINE, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ.  13.