38 N.J. Super. 528 (1956)
119 A.2d 776
MARGARET McDERMOTT, PLAINTIFF-APPELLANT,
v.
SILVIA BOTWICK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1955.
Decided January 6, 1956.
*529 Before Judges CLAPP, GOLDMANN and FRANCIS.
Mr. David Cohn argued the cause for the appellant (Mr. Albert L. Cohn, on the brief).
Mr. Robert L. Clifford argued the cause for the respondent (Messrs. Mead, Gleeson, Hansen & Pantages, attorneys).
*530 The opinion of the court was delivered by FRANCIS, J.A.D.
Defendant was granted a summary judgment on motion before trial in this automobile negligence personal injury suit. The action was taken on the ground that a general release executed in favor of defendant barred the claim. Plaintiff appeals, alleging that on the affidavit submitted a jury question existed as to whether the release was procured by fraud.
Factually it appears that on October 21, 1954 plaintiff, a pedestrian, was struck and injured by an automobile driven by the defendant. Six days later she signed a general release for $200 discharging all claims against the defendant which arose out of the accident.
Subsequently she sued to recover damages on account of the personal injuries and monetary losses alleged to have resulted from defendant's negligence in operating her car at the time in question. An answer was filed which, in addition to the usual denial of negligence and the assertion of contributory negligence, set forth as a further defense that plaintiff's claim was barred by reason of the general release.
No reply was interposed in spite of the fact that plaintiff is seeking to avoid the legal effect of the release by a claim of fraud in its procurement. In such a situation a reply must be filed. R.R. 4:7-1. However, in view of the affidavit presented on the motion for summary judgment and the conclusion we have reached on the appeal, an opportunity should be given to docket the necessary pleading before trial.
A demand for admissions under R.R. 4:26-1 was served on plaintiff by which she was asked to admit (1) that on October 27, 1954 she signed a general release discharging the defendant from any liability arising out of the accident, and (2) that she received $200 for doing so. Although, as defendant points out, the rule requires the admissions to be furnished under oath, it was not done. A paper designated "Answers to request for admissions," signed by counsel, was delivered to defendant's attorneys. These answers conceded *531 that "on or about October 27, 1954 the plaintiff signed some paper" and (2) that she received "$200 from the defendant or a representative thereof."
It is argued on behalf of the defendant that the matters referred to in the demand should be deemed admitted because of the failure to submit personal answers under oath and because the answers did not set forth "in detail the reasons why" she could not "truthfully admit or deny" the facts specified. These violations are difficult to understand and to excuse when the language of the rule is so plain. In any event, the basic problem in the case was considered on the merits by the trial court. Undoubtedly it was persuaded to do so by the plaintiff's affidavit on the motion which presumably contained all of the facts on which reliance is placed to avoid the release. We shall do likewise.
Moreover, it may not be amiss to point out that when the request relates to the genuineness of "any relevant document described" therein, the rule also requires a copy to be served unless it has already been furnished. Fair compliance here seems to call for the attachment of a copy of the release.
Some time after receipt of the admissions defendant moved for summary judgment on the theory that the release established a bar to the suit. The motion was supported by an affidavit of an insurance company adjuster who asserted that he settled the plaintiff's claim for $200 after a disclosure of his identity, his interest in the matter, and his purpose in visiting her. He deposed also that the release was signed after full explanation by him as to what it was and as to its effect. Copies of the document and the check in payment accompanied the affidavit.
On the other hand, the plaintiff's affidavit, which was dated July 29, 1955, says that the adjuster came to her home between 9 and 10 in the evening. She was alone at the time, lying on a couch and suffering intense pain from her injuries. She claims that the visitor did not identify himself except to say that he had come to her home to arrange for the payment of her medical expenses. They discussed the expenses *532 "for doctors, medicines and other costs to aid me in effecting a cure of my injuries." Then she was asked to sign a receipt for the payment of $200 for these items and she did so, believing it to be such a receipt.
The affidavit denies that she saw a release, knew that she was signing one or intended to do so. The paper presented to her was "bent over" so that its contents did not become known to her.
She swore further that she had continued to suffer from the injuries "and still must secure the benefit of deep therapy treatments" to relieve her condition, which is permanent in character. This statement was made nine months after the accident. Of course, it cannot escape notice that no physician's report as to the nature of her injuries or as to their alleged permanency was furnished. According to plaintiff, she was "under the doctor's care until late in November, regularly." She did not assert unqualifiedly that any medical treatment was received subsequent to the end of November  about one month after the accident  only that she "still must secure the benefit" of heat treatments. Nor did she submit any information as to her expenses down to the time of the motion.
The rule (R.R. 4:58-3) regulating the practice on motions for summary judgment proscribes the granting thereof unless the pertinent papers show palpably that there is no genuine issue as to any material fact. A pretrial judgment is not proper where there is reasonable doubt as to the existence of any such fact; all doubts and inferences from the pleadings and proofs must be resolved against the movant; and if a factual conflict as to any material fact appears or is reasonably deducible from the papers, the cause must be retained for plenary trial. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-77 (1954); Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 155-157 (Ch. Div. 1951), affirmed 9 N.J. 605 (1952); Templeton v. Borough of Glen Rock, 11 N.J. Super. 1 (App. Div. 1950). Skepticism of the trial court as to the veracity of statements appearing in affidavits opposing the application does not alter *533 the rule; the issue of credibility must be held for jury determination.
Appraisal of the record before us in the light of the test described must lead to the conclusion that a factual issue of fraud in the procurement of the release arose from the conflicting affidavits of the plaintiff and the adjuster who effected the settlement.
The principle under which a plea of deception and imposition is sanctioned is stated simply in Peter W. Kero, Inc. v. Terminal Construction Corp., 6 N.J. 361, 369 (1951):
"* * * It is well settled that where a party is induced to sign a release by reason of a misrepresentation intended to deceive him as to its purport or content, the signer has a right to set up such fraud or imposition in avoidance of such release when there is an attempt to use it against him by the release, even though the signer might have discovered the fraud perpetrated upon him by reading the paper and was negligent in omitting to do so. (Citation omitted.) And when the fraud is in dispute, it is a question for the jury."
The affidavit of the plaintiff clearly creates a factual dispute as to whether the defendant's representative willfully deceived her into believing that her medical bills and expenses were being paid and that she was signing a receipt for that payment alone. Her denials that she knew the document presented for signature was a release and that disposition of her injury claim was even discussed, conflict with the assertions of the adjuster. And her allegation that the document was bent over (susceptible as it is of the inference that the body of the instrument was thus obscured), which must be taken as true on the motion, lends some support for her position. On the situation disclosed by the proofs, it was error to conclude that palpably no genuine issue existed on the subject of fraud. Paul v. Flannery, 128 N.J.L. 438 (E. & A. 1942); Palmer v. Tomlin, 104 N.J.L. 215 (Sup. Ct. 1928); Fagan v. Central Railroad Co., 94 N.J.L. 454 (E. & A. 1920); and see the broader view which has resulted from the Constitution of 1947; Heuter v. Coastal Air Lines, Inc., 12 N.J. Super. 490 (App. Div. 1951).
*534 Defendant points out further that the check for $200, which was delivered upon the execution of the release, bore the notation "settlement of all claims" on its face. These facts, plus the endorsement of the check and collection of the proceeds, are said to constitute an accord and satisfaction of plaintiff's unliquidated damage claim.
The notice of motion set out the release alone as the ground for summary judgment. No opinion was filed by the trial court and we presume that the check was not considered to have a separate or individual impact upon the assertability of the original cause of action.
In any event, there is little about the check which would tend to notify the plaintiff that the transaction was other than as represented to her by the adjuster. On its face, under the designation "Name of insured," "Benjamin Botwick" appears. In the space immediately below, marked: "This payment covers," there was written in ink: "Settlement of all claims." The reverse side, where an endorsement would be placed normally, is entirely blank except for the Margaret McDermott signature.
Under the circumstances, we do not feel that the endorsement carries sufficient legal decisiveness to constitute an accord and satisfaction. It is for the jury to say whether the check and the release are integral associates of the alleged fraud which induced the ostensible yielding of the plaintiff's claim.
It may be noted in passing that the check does not contain a reference to the specific claims being paid thereby nor, immediately above the place of endorsement, language constituting a release. Such inscriptions, of course, carry greater probative force. However, it is not necessary at this time to assert a definitive rule as to the effect of a check of that type when it complements a general release alleged to be the product of fraud. Cf. Paul v. Flannery, supra; Texas & P. Ry. Co. v. Poe, 131 Tex. 337, 115 S.W.2d 591 (1938).
The judgment is reversed.