Irene F. O'TELL, Administratrix of the Estate of John O'Tell, Deceased, Plaintiff-Appellant,

v.

NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Defendant-Appellee.

No. 379, Docket 24026.

United States Court of Appeals Second Circuit.

Argued May 8, 1956.

Decided Sept. 5, 1956.

Dennis N. Garvey, New Haven, Conn., Caplan & Garvey, New Haven, Conn.

(Richard A. Dice, New Haven, Conn., on the brief), for plaintiff-appellant.

Thomas P. Hackett, New Haven, Conn. (Edwin H. Hall, New Haven, Conn., of counsel), for defendant-appellee.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

The facts relevant to this appeal are not in dispute. They are as follows. The plaintiff, as administratrix brought an action under Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60, against the defendant railroad company, for injuries to and for the death of her son, an employee of the railroad. The defendant in its answer pleaded a release as a bar to the action, claiming that it had paid the plaintiff $2500 in full satisfaction of the claims for which the suit was brought. In her reply, the plaintiff admitted receiving the money but claimed that the release was invalid, and that she at all times was willing, able and ready to return the money to the defendant but her tender thereof had been refused.

At the trial, the Judge referred to the $2500 which the plaintiff received for her release, and charged the jury that only if it found the release invalid could a verdict for plaintiff be given and that if it found "that the purported release in this case is invalid and of no force and effect, * * * you will disregard the purported release in your consideration of this case." It may be noted that the instruction just quoted was given at the plaintiff's express request. In his charge as to the damages to be awarded the Judge instructed the jury as to the measure of damages under F. E. L. A. and specified several factors which the jury should consider, such as monetary loss to the plaintiff of support reasonably expected from her deceased son, the plaintiff's expectancy of life, and present value of a lump sum, and fair compensation for the pain suffered by the deceased son prior to his death. But nowhere in the charge was the jury in-

structed to deduct from the damages as found the sum of $2500 which the plaintiff had received for the release which she had signed. No exceptions were taken to the charge as given.

A general verdict of $5000 for the plaintiff was returned. The clerk on November 9, 1955, with the Judge's approval, entered judgment for $5000 plus costs. On December 14, 1955 execution was issued in the amount of $5000, which was stayed on oral order of the Judge. Thereafter, on January 12, 1955, the plaintiff moved to vacate the stay of execution and on January 14, 1955, defendant filed a "Motion De Satisfaction of Judgment" reciting its check for $2500 paid to the plaintiff as consideration for the contested release, and praying in effect that the sum of $2500 represented by said check should be applied as part payment against the $5000 judgment.

Judge Smith disposed of both motions by an order directing (a) that the $2500 release money retained by the plaintiff should be credited against the judgment and (b) that execution might issue for the balance. From this order the plaintiff appeals.

The crux of the problem presented is one of interpretation, viz.: whether (a) Judge Smith correctly interpreted the general verdict of $5000 as importing that $5000 represented the amount of the plaintiff's damages measured in accordance with his instructions or (b) whether the verdict imported that the jury having fixed the plaintiff's damages at $7500 had deducted therefrom the sum of $2500 paid for the release. For solution of the problem it is necessary only to examine the charge. As already noted, the jury was instructed as to the proper measure of damages and was left to assess the damages without any instruction to make a deduction from the damages found. Moreover, as already noted, the jury was specifically instructed to "disregard the purported release in your [its] consideration of the case," if the release were found invalid. In the light of these instructions, we think it rea-

sonably clear that the jury, as instructed, disregarded the release and found the plaintiff's damages in the principal amount of $5000 only. No one will contend that F. E. L. A. cases constitute an exception to the rule that in the absence of a compelling showing to the contrary a verdict should be interpreted in accordance with a presumption that the jury followed the judge's instructions. Cf. Union Pacific Railroad Co. v. Hadley, 246 U.S. 330, 334, 38 S.Ct. 318, 62 L.Ed. 751.

The plaintiff relies heavily on Seaboard Air Line Railroad Co. v. Gill, 4 Cir., 227 F.2d 64, 67, in which the court interpreted the verdict to represent the amount of damages due the plaintiff after deducting the consideration given for a release which was found to be invalid. But in so far as can be ascertained from the appellate opinion, that interpretation of the verdict depended upon the fact that in that case the verdict had been returned "in answer to the question * * * as to what amount the plaintiff was entitled to recover of the defendant on account of the death of the deceased." And in Gill the court stressed the fact that the jury had "passed on the amount due to the plaintiff *with the opportunity* to take into account the money he had already received." Thus the Gill case is not apposite to that now before us. For the verdict here was in response to instructions as to the measure of damages under the Federal Employers' Liability Act and the case was submitted not only without instruction or opportunity to the jury to deduct the release money from the damages but rather with express direction to disregard the purported release. A similar situation appears to have been presented in Mandeville v. Jacobson, 122 Conn. 429, 189 A. 596, where it was held that money paid for an invalidated release should be credited on the verdict and that judgment was rightly entered only for the balance.

Doubtless it would have been proper for the Judge in his charge to have directed the jury, if it should find the re-

lease invalid, to deduct the release money from the damages to the plaintiff resulting from the decedent's injuries and death, and to return a verdict for the balance. Union Pacific Railway v. Harris, 158 U.S. 326, 333, 15 S.Ct. 843, 39 L.Ed. 1003. Not having done so in his charge prior to the verdict, it was proper in the situation here for the Judge to order the deduction after the verdict and to cause it to be reflected in an amended judgment. For not only did the verdict state the full amount of plaintiff's damages under F. E. L. A., but also it necessarily constituted an adjudication that the plaintiff held the $2500, concededly received for the release, for the defendant's benefit. The omission of this feature of the verdict from the judgment we think Judge Smith rightly held to be an error which might "be corrected by the court at any time * * *," under Fed.Rules Civ.Proc. rule 60(a), 28 U.S. C.A. We also agree that the defendant was entitled to relief from the incomplete judgment on the ground of mistake and inadvertence under Rule 60(b). On the facts as above stated, the defendant's "Motion De Satisfaction of Judgment" was filed within a reasonable time as required by Rule 60(b).

Affirmed.

FRANK, Circuit Judge (dissenting).

I think Seaboard Air Line Railroad Co. v. Gill, 4 Cir., 227 F.2d 64, 67 is directly in point. There a truck, driven by William Oliver Long, collided with the defendant's railroad train. The truck driver, his wife, Jessie Long, and her child, William Thomas Long, were killed. Gill, as administrator of the three, brought separate suits against the defendant; the suits were consolidated for trial. The defendant pleaded releases as a complete defense in each suit. At a first trial, the cases were submitted to the jury upon issues (1) as to the negligence of the Railroad Company, (2) the contributory negligence of the driver of the truck, (3) the understanding of Gill as to the nature and effect of the releases, and (4) the amount, if any, which the administrator was entitled to recover in each case. There was proof that the releases had been obtained by fraud or undue influence, and plaintiff asked the judge to instruct the jury accordingly, but the judge refused to do so. Instead, he told the jury that the question was whether plaintiff had executed the releases without understanding their effect. The jury found that the deceased persons were killed by negligence of the Railroad Company, that the driver of the truck was guilty of contributory negligence and his administrator was not entitled to recover anything, and that the administrator was entitled to recover $1,500 on account of the death of Mrs. Long and $2,500 on account of the death of her son. The judge set aside the verdicts, on the ground that the jury may have thought the releases were signed through a unilateral mistake of plaintiff and that, in such circumstances, the releases were valid under North Carolina "law." The judge entered judgment for the defendant. On appeal, the Fourth Circuit held that the judge had erred in refusing to give plaintiff's requested instruction concerning the releases. The court remanded for a new trial, as to the Jessie Long and William Thomas Long cases, on the sole issue of the validity of the releases. It said that if the jury, on that issue, should find in plaintiff's favor, judgments should be entered for him in these cases for the amounts specified in the previous verdicts. See Gill v. Seaboard Air Line Railroad Co., 4 Cir., 208 F.2d 7, 12. On the new trial, the jury found for the plaintiff, and the judge entered judgments of $1,500 in the one case and $2,500 in the other. But the judge made an order that the defendant be allowed a credit on the judgments for the amounts paid for the releases. The defendant appealed and the plaintiff cross-appealed. The Fourth Circuit, in Seaboard Air Line Co. v. Gill, 4 Cir., 227 F.2d 64, 67, affirmed on the defendant's appeal, and said: "A cross appeal was filed by the administrator complaining of an order of the District Judge that the de-

fendant be allowed a credit on the judgments for the sums paid when the releases were signed, that is to say, a credit of $300 on the judgment for $1500 in favor of the administrator in the case of Jessie Thomas Long, and a like credit on the judgment of $2500 for the death of her son William Thomas Long. These credits represented the monies paid to the administrator when the releases were executed. We think that these deductions should not have been made. The jury at the first trial, having heard all the evidence in regard to the sums paid to the administrator, found by their verdict that he was entitled to the sums of $1500 and $2500 respectively, in answer to the question in each case as to what amount the plaintiff was entitled to recover of the defendant on account of the death of the deceased. Since all of the matters concerning these payments were brought to the jury's attention, it is reasonable to assume that the jury took into account the monies which the administrator had already received in determining the amounts which he should recover from the Railroad Company. In Hayes v. Atlanta & C. Air Line R. Co., 143 N.C. 125, 55 S.E. 437, and King v. Atlantic Coast Line R. Co., 157 N.C. 44, 66, 72 S.E. 801, 48 L.R.A.,N.S., 450, the general rule is stated to be that when money is paid for releases subsequently set aside for fraud, it should be deducted —if the releasor afterward recovers damages; but in these cases, unlike the case at bar, the jury had not passed on the amount due to the plaintiff with the opportunity to take into account the money he had already received. We find nothing in these cases at variance with the conclusion which we have reached. The judgment of the District Court will be sustained insofar as it supports the findings of the jury as to the invalidity of the releases; but the judgment will be reversed insofar as it allows a credit to the defendant for the sums paid to the administrator at the time the releases were executed, and the case will be remanded with instructions to enter judgments in favor of the administrator for the sums determined by the jury's verdicts."

It will be noted that the court distinguished two North Carolina decisions. In each of them, the trial judge, on account of a release, had taken the case away from the jury and directed a verdict for the defendant, and the upper court had reversed for a new trial. Obviously, in neither case had the jury considered the release. This explains what the Fourth Circuit meant in the Gill case when it said that "in these cases, unlike the case at bar, the jury had not passed on the amount due to the plaintiff with the opportunity to take into account the amount he had already received", whereas in the Gill case it was "reasonable to assume that the jury took into account the monies which the administrator had already received in determining the amounts which he should recover from the Railroad Company."

I think the Fourth Circuit's interpretation of the verdict was correct and should be followed here. No more than here, did the trial judge in the Gill case submit to the jury a specific question as to whether the amount of each verdict was to be computed before or after deducting the amount paid for the release. See the pertinent portions of the judge's charge in the instant case, quoted in the Appendix to this opinion; and note that here the jury's verdict, as entered by the Clerk, read: "In this case the jury finds the issues in favor of the plaintiff, and therefore finds for the plaintiff to recover of the defendant the sum of $5,000."

Had the defendant here so desired, it could have requested the trial judge specifically to charge the jury—see Union Pacific Railway v. Harris, 1895, 158 U.S. 326, 333, 15 S.Ct. 843, 845, 39 L.Ed. 1003 —"that, if they made an allowance to the plaintiff, they should deduct from it what [the plaintiff] had received" as consideration for the release. The problem confronting the defendant at the trial was not novel. Defendant's counsel, who is no novice, was of course well aware of Union Pacific Railway v. Harris and other cases where such a charge was re-

quested and given.[1] Since he failed to act in accord with those precedents, the defendant should not now be allowed to have the amount of the verdict reduced as if its counsel had requested and obtained such a charge.[2]

My colleagues cite but one case supporting their position, Mandeville v. Jacobson, 122 Conn. 429, 189 A. 596, 598. There the court reached its conclusion without any discussion or reasoning whatever; in doing so, surprisingly, it cited Union Pacific Railway v. Harris, supra. I think the Mandeville case is wrong.

### Appendix

Pertinent parts of the judge's charge.

"If you find that the purported release signed by Mrs. O'Tell was obtained by duress, or coercion, or over-reaching, or by the taking of unfair or unconscionable advantage, or by fraud practiced upon her, or by misrepresentations of material facts, or by express representation of material facts in reckless disregard of their truth or falsity, or by statements of facts which were known to be untrue, or which were made without belief in their truth or recklessly, or that such false representations were made for the purpose of inducing Mrs. O'Tell to act on them, and that Mrs. O'Tell has been induced to act on such representations to her detriment, which she would not otherwise have done, then you must find that the purported release in this case is invalid and of no force or effect, and you will disregard the purported release in your consideration of this case.

"And in considering whether the plaintiff has sustained the burden of establishing the invalidity of the release, if you find that she has introduced sufficient evidence to make out a prima facie case regarding the invalidity of the release in question, the failure of the employer, Railroad, to call the employers' adjustor,

namely Shippee, as a witness who was available in Court and was the one whom the defendant Railroad would naturally produce, then you may draw an inference as to the testimony of the employee adjustor, Shippee, that it would have been unfavorable to the defendant Railroad.

"To recapitulate, then: The burden of proof lies on the plaintiff, Mrs. O'Tell, to prove, by a fair preponderance of the evidence that the decedent, John O'Tell, was injured, that such injury was caused by the negligence of the defendant, and that the release was obtained by mutual mistake of facts, by misrepresentation of fact, or by threats or duress.

"If you find that the plaintiff has proved that the defendant was negligent, and that such negligence was a substantial factor in causing the plaintiff's injury, and that the release was not freely and understandingly given, then you will find for the plaintiff against the Railroad.

"The measure of damages in this case for the death of the decedent under the terms of the Act is the monetary loss suffered by the mother, Mrs. O'Tell, by being deprived of the support which she might reasonably have been expected to receive from the decedent had he lived. In arriving at this amount, if you find that the plaintiff is entitled to recover, you should consider the evidence as to the son's employment and rate of pay, the length of time you would reasonably expect the mother to live, having in mind her age, her condition of health in November, 1952, and the evidence that the life expectancy of a normal woman of her age at the time of the accident was eight years.

"You may also award the plaintiff, if you find her entitled to recover, such a sum of money as you find to be fair compensation to the injured man prior to his death for the conscious pain and

---

1. See, e. g., O'Brien v. Chicago, M. & St. P. Ry. Co., 1894, 89 Iowa 644, 57 N.W. 425; Carroll v. Fetty, 1939, 121 W.Va. 215, 2 S.E.2d 521; Paul v. Flannery, 1942, 128 N.J.L. 438, 26 A.2d 553.

2. It may be that the trial judge here violated the Sixth Amendment's prohibition against a re-examination of facts tried by a jury. Cf. Kennon v. Gilmer, 131 U. S. 22, 27–30, 9 S.Ct. 696, 33 L.Ed. 110.

suffering which you find that he did suffer as a result of the defendant's negligence.

"Damages in this case for the death should be equivalent to compensation for the deprivation of the reasonable expectation by the mother of pecuniary benefits that would have resulted from the continued life of the decedent, if you find she is entitled to recover of the defendant.

"When future payments or other pecuniary benefits are to be anticipated, of course the verdict should be made upon the basis of their present value only. The life expectancy of the plaintiff is to be considered in arriving at the valuation. Mortality tables are merely guides in arriving at this evaluation." * * *

"So you will determine from the evidence which you have heard here in Court what the facts were in this case and arrive at your verdict. You might first take up the question of the release, because of course if the release is valid the other questions will not be reached by you.

"The plaintiff, as I have said, has the burden of establishing that there was some mistake, or over-reaching, or some mental or emotional condition such as to make the signing of the release not her own free and voluntary act, in order to avoid the release. On the issue of negligence, of course, the plaintiff may not recover unless she has established that the defendant's employee was guilty of negligence, in the failure to use reasonable care either in a failure to instruct the plaintiff's decedent or in the actual instruction or warning given under the circumstances at the time of the injury. * * *

"On the question of damages, as I have said, it is the measure of loss to the mother of her expectation of pecuniary support from the son during her remaining life, measured from the date of the accident, plus any amount you find a reasonable compensation for any conscious pain you find that the decedent did suffer between the injuries and the death, and caused by the negligence of the defendant.

"In arriving at the loss to the mother, if you reach that point, you might consider the testimony as to the amount which the son was earning, which as I recall it, was something like $1.64 an hour, which would work out if my calculations are correct, to something like $3,300.00 a year, and determine what proportion of that you would have expected from the evidence to be used for the support of the mother. Of course, those are just evidence from which you should determine what might fairly be expected to be received by her over the length of time you find she would be reasonably expected to survive."