249 F.2d 5
 DURA ELECTRIC LAMP COMPANY, Inc., Appellant,
v.
WESTINGHOUSE ELECTRIC CORPORATION, Tungsol Electric, Inc., Sylvania Electric Products, Inc., and Consolidated Electric Lamp Company.
 No. 12196.
 United States Court of Appeals Third Circuit.
 Argued October 21, 1957.
 Decided November 8, 1957.
 
 Burton R. Thorman, Washington, D. C. (Maurice J. Zucker, Zucker & Goldberg, Newark, N. J., on the brief), for appellant.
 Edward J. O'Mara, Jersey City, N. J. (Stryker, Tams & Horner, Newark, N. J., Pitney, Hardin & Ward, Newark, N. J., O'Mara, Schumann, Davis & Lynch, Jersey City, N. J., Leo S. Sullivan, Jersey City, N. J., on the brief), for appellees.
 Before GOODRICH, STALEY and HASTIE, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 This is an appeal from a judgment for the defendant rendered on motion for summary judgment in an antitrust case. The basis for the district court's ruling was that the plaintiff had given a valid and unconditional release to one of the parties to a joint tort and that this release discharged the obligation of all.
 
 
 2
 It appears that plaintiff in this case had, at the conclusion of a government action against important producers in the incandescent electric lamp industry, started a suit against General Electric Company naming Corning Glass as a coconspirator. This suit was dismissed by the plaintiff upon receiving a payment of $50,000 from General Electric and giving to the defendant a general release. Subsequently the plaintiff brought action against the defendants named here, alleging conspiracy under the Sherman and Clayton Acts, 15 U.S. C.A. §§ 1-7, 15 note, 12 et seq., and naming as coconspirators General Electric and Corning Glass Works but not naming them as defendants.
 
 
 3
 The single question for decision here is whether the release given by the plaintiff in the General Electric suit bars the action against alleged coconspirators.
 
 
 4
 The plaintiff says this question is to be settled by federal law and federal law is in its favor. We are not so sure that what we have here is a federal law question. The right is created under federal law, true. But whether subsequent things which the plaintiff has done destroys the right is not necessarily a federal law question. Cf. Bank of America Nat. Trust & Sav. Ass'n v. Parnell, 1956, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93, reversing 3 Cir., 1955, 226 F.2d 297. But see Stella v. Kaiser, 2 Cir., 221 F.2d 115, certiorari denied 1955, 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745. See, also, Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U.Pa.L. Rev. 797 (1957). We do not need to decide that issue because we think by either route the plaintiff cannot now recover.
 
 
 5
 The common-law rule on the subject was perfectly clear. It is accurately expressed in Restatement, Torts § 885 (1) (1939) as follows:
 
 
 6
 "(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agreed that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document."
 
 
 7
 Some of the applications of the rule have been severely criticized by law teachers. See Prosser, Torts 1107-1111 (1941). Much of this criticism, however, has come from refusal of courts in some instances to give effect to language reserving rights against parties not released or in interpreting language sounding in terms of a covenant not to sue as a general release.[1] Here we have no such complication. The document of release, which sounds as though it had been taken from an old form book, is as broad as all out of doors and typical of the wasteful use of words in the English language in which lawyers sometimes indulge. It is set out verbatim in the margin because it is the heart of the case but setting it out does not carry the court's approval of it as a piece of English composition.[2]
 
 
 8
 It is to be noted that the language of the release is as general as language can be. There is nothing by which it may be interpreted as a covenant not to sue. There is nothing which even hints at a reservation of rights. There is nothing in the facts here which looks to a reexamination of the release based upon fraud or mutual mistake or anything of the sort. Michael Rose Productions v. Loew's, Inc., D.C.S.D. N.Y.1956, 143 F.Supp. 606; McDermott v. Botwick, App.Div.1956, 38 N.J.Super. 528, 119 A.2d 776. The transaction was one conducted between lawyers so we do not have an instance where a court may strive to extricate an uninformed layman from the consequences of a hasty settlement. As the court below said at the conclusion of the argument upon the motion for summary judgment, "[I]f there ever was [a] case * * * which seems to come within the confines of the general rule that release of one tortfeasor is a release to all, this is it." That is our view also.
 
 
 9
 The New Jersey authorities are clear in their enunciation of the common-law rule as to the effect of a release as applied to a situation like this. See, e. g., Moss v. Cherdak, E. & A.1935, 114 N.J.L. 332, 176 A. 333; cf. Aljian v. Ben Schlossberg, Inc., App.Div.1950, 8 N.J. Super. 461, 73 A.2d 290. So, too, we think are the federal cases. See, e. g., Combined Bronx Amusements v. Warner Bros. Pictures, D.C.S.D.N.Y.1955, 132 F.Supp. 921; Solar Elec. Corp. v. General Elec. Co., D.C.W.D.Pa.1957, 156 F. Supp. 51; cf. Stella v. Kaiser, 2 Cir., 1954, 218 F.2d 64, 68; Save Elec. Corp. v. General Elec. Co., Civil No. 7146, N.D. Ohio, March 28, 1957.
 
 
 10
 One more point should be noted. There is an affidavit by the president of the plaintiff company which figures in the district court proceedings. This affidavit does not claim that the company was lured into making this settlement. It simply says that it was not the intention of the president to release all claims against other conspirators. We think this affidavit does not change the application of the rule. When a man uses words which have a given legal effect he is bound by that effect in the absence of fraud or mistake none of which there is here. Combined Bronx Amusements v. Warner Bros. Pictures, supra; Save Elec. Corp. v. General Elec. Co., supra; Restatement, Torts § 885, Com. d (1939); 3 Williston, Contracts § 647 (Rev.Ed.1936).
 
 
 11
 The judgment of the district court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 In McKenna v. Austin, 1943, 77 U.S.App. D.C. 228, 134 F.2d 659, 148 A.L.R. 1253, which discusses the evils of the common-law rule the document under consideration was couched in terms of a covenant not to sue and was accompanied by an express reservation against other parties
 
 
 [2]
 "Dura Electric Lamp Company, Inc., a corporation organized and existing under the laws of the State of New Jersey, on its own behalf and on behalf of the individuals and corporation who have executed assignment of claims to it, a copy of which assignment is annexed hereto as Exhibit `A', for and in consideration of the sum of Fifty Thousand Dollars ($50,000), lawful money of the United States of America, and other good and valuable consideration, to it in hand paid by General Electric Company, the receipt whereof is hereby acknowledged, has remised, released and forever discharged, and, by these presents, does, for itself, its predecessors, successors and assigns, remise, release and forever discharge General Electric Company and all its subsidiary and successor companies, all its past, present and future officers, directors, stockholders, agents, employees, and each and every one of the aforesaid jointly and severally, of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, which it, or any of its predecessors or assignors, ever had, now has or which it or any of its predecessors or assignors or its successors or assigns hereafter can, shall or may have, for, upon and by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents."